KNOLL vs. THE STATE.

*April 14 — May 10, 1882.*

CRIMINAL LAW, etc. *(1) Expert testimony. (2) Reading medical books to jury. (3) Instructions reviewed only upon exceptions. (4) An instruction considered.*

1. On a trial for murder, where the evidence relied upon by the prosecution was mainly circumstantial, a person called as an expert testified, against objection, that he had made a comparison of hair taken from the head of the deceased with hair found (together with blood) upon a wheelbarrow belonging to the accused; that such comparison was founded on his experience, he having made a very careful study of hair; and that the hair was precisely the same in length, magnitude and color, and in every other respect, *so that any person could have told it as well as himself;* and

he added that, as the result of that comparison, he could say that "it was from the head of the same person." *Held,* that the statement last recited was improperly admitted in evidence, as it appears to have been based merely upon facts open to common observation, and undertook to determine a question which was for the jury.

2. Where a medical witness has testified as from his own knowledge and experience to a matter which is within his province as an expert (as that blood stains were caused by human blood corpuscles), he cannot be impeached by reading to the jury extracts from *medical works.*

3. In criminal as in civil trials this court reviews the instructions given to the jury only so far as exceptions have been taken thereto.

4. The decision in *Dickerson v. The State,* 48 Wis., 288, that it was not error to instruct the jury that their verdict must either be "guilty of murder in the first degree," or "not guilty," applies only to cases in which there is no evidence to sustain a conviction for any lower grade of homicide.

ERROR to the Circuit Court for *Outagamie* County.

The case is stated in the opinion.

For the plaintiff in error there was a brief by *Hudd & Wigman,* and oral argument by *Mr. Hudd.* They argued, *inter alia:* 1. It was error to permit Dr. Piper to testify to his comparison of two hairs, one from a wheelbarrow and one from the skull, and to declare his belief that they both belonged to the same head. This was not a scientific question, calling for an expert. An expert is one who testifies as to conclusions which cannot be verified by the jury. 1 Wharton on Ev., sec. 434; *Cook v. State,* 4 Zab., 843; *Jefferson Ins. Co. v. Cotheal,* 7 Wend., 78; *People v. Bodine,* 1 Denio, 281; *State v. Cole,* 19 Wis., 129. 2. It was error to deprive the defendant of his right to attack the credibility of the expert by showing his variance and disagreement with standard scientific works on the same subject. *Collier v. Sampson,* 5 C. & P., 73; 1 Greenl. Ev., 595; *Carter v. State,* 2 Ind., 617; *Davis v. State,* 35 id., 496. 3. It was error to instruct the jury that their verdict must be "guilty of mur-

der in the first degree, or not guilty." See *State v. Mc-Donnell*, 32 Vt., 491; *State v. Gentry*, 2 Jones' Law, 406; *Foster v. People*, 50 N. Y., 598; *State v. Conley*, 39 Me., 78; *Davis v. State*, 10 Ga., 108; *Holder v. State*, 5 id., 441; *Lane v. Comm.*, 59 Pa. St., 371. A motion for a new trial having been made and denied, and an exception duly taken, the whole charge is before this court for review. It was the duty of the court below to give proper and all required instructions. *Conners v. State*, 47 Wis., 523. The rule in civil cases should have no application to cases like this, where no essential rights are or can be waived. See *Ohms v. State*, 49 Wis., 415; *People v. McKay*, 18 Johns., 212; *Nomaque v. People*, Breese, 148; *Schumaker v. State*, 5 Wis., 324; *People v. Cancimi*, 7 Abb. Pr., 271; *Keenan v. State*, 8 Wis., 132; *Rowan v. State*, 30 id., 143; *Fulk v. People*, 42 Ill., 332; *McCann v. People*, 6 Park., 629; *State v. McNinch*, 12 S. C., 89; *Mace v. State*, 9 Tex. App., 110.

For the state there was a brief by *William Kennedy*, and oral argument by *Mr. Kennedy* and by *H. W. Chynoweth*, Assistant Attorney General.

COLE, C. J. The defendant, and plaintiff in error, was charged and tried for the crime of having wilfully and feloniously killed, with malice aforethought, one Charles Rohde on the 4th of March, 1879. The evidence relied upon by the state to prove the accused guilty of the crime charged against him was mainly circumstantial. It appeared that the deceased had been in the employ of the defendant for a short time, and the weight of testimony tends to show that he was last seen alive in the early part of the evening of the 3d of March, at the defendant's saloon. His body was found on the 25th of the same month in an unfrequented place in a swamp, about forty rods south of a railway track, and about one-half mile south-west of the defendant's residence. There were four cuts or stabs on his left breast, and two on the front part of

each leg between the knee and thigh. Medical witnesses, who made a *post-mortem* examination of the body, testified that there was a fracture of the skull on the right side of the forehead extending backward and downward to about the margin of the ear; that his bowels had been severely injured from blows; and that death was probably caused by the injury to the head and bowels combined. The theory of the prosecution was, that the defendant had killed Rohde on the night of March 4th in his barn, and had then taken the body to the place where it was found for the purpose of concealing the crime.

Among other evidence given to sustain this theory the state produced as a witness one John Timmens, who lived very near the railroad, and who testified that about midnight, March 3d, he saw from the window of his house a man come along the track with a wheelbarrow and something in it. The witness described the wheelbarrow and the man. There was a wheelbarrow in the possession of the defendant answering this description, and the defendant in size was about such a man as witness saw. There was some blood and hair found upon the wheelbarrow which the defendant had. One Dr. Piper was sworn as a medical expert. He had made a microscopical examination of blood found on the barrow and on pieces of wood taken from the barn; had examined pieces of cloth and hair,— hair taken from the skull of the deceased, and hair found on the wheelbarrow. This witness was permitted to state, against defendant's objection, that he had made a comparision of the hair found on the wheelbarrow and that taken from the skull, such comparison being founded on his experience, he having made, as he said, a very careful study of hair. He was asked to state, and did state under objection, the result of that comparison. He said that the hair was precisely the same in every respect, in length, magnitude, color, and in every other respect, so that any person could have told it as

well as himself, and he added: " As the result of that comparison, I can say that it was from the head of the same person."

We have detailed enough of the facts to show the very important bearing of this inculpatory testimony. One exception relied on for a reversal of the judgment is the admission of this testimony against the defendant's objection; and the question presented for decision is, whether it was competent and proper testimony under the circumstances. The objection to its admission is, that the witness was permitted to state or give his opinion upon a vital fact in the case, which it was the province of the jury to determine from the evidence given. The witness said that the hair which he had examined found on the wheelbarrow and that taken from the skull of the deceased were from the head of the same person. The witness reached this conclusion, as we understand his testimony, not from any scientific tests, or peculiarities in the structure of the hair which an examination by a microscope would disclose, but from the length, magnitude and color, or those obvious marks and resemblances which one person of good vision would observe as readily as another. The comparison made required no peculiar skill nor scientific knowledge. It was no more in the province of an expert than of an ordinary person to make it. It related to a matter of common observation. The jury were as competent to make the comparison from the description given of the hair, and draw the conclusion whether it came from the head of the same person, as was the witness. The opinion of the witness as to the fact that the hair came from the head of the same person was not admissible on the ground that the inquiry related to a scientific subject — one which required peculiar knowledge or previous study and experience to give information about. But it related to a matter within the observation, judgment and knowledge of any ordinary man; for the resemblances relied upon in making the comparison,

as the length, magnitude and color of the hair, were as open to the observation of the jury, or the jury could draw their inference from these resemblances as well as any one. The witness, then, could not testify to his opinion on the ground that the subject matter of the inquiry related to a scientific subject, and was expert testimony.

Is there any other principle upon which the testimony would be admissible? At first we had some doubt whether it should not be received on the ground that the witness was merely stating his opinion as to the identity of the hair, and that it was admissible upon the same principle as an opinion in respect to the value of property, or damage done to it, or the identity of a chattel or person, or facts of that nature. In regard to this class of facts a witness can only testify by using language which amounts to little more than giving his opinion about them. But this kind of evidence is admitted in that class of cases from necessity, because it is impossible, by any mere words of description, to give the jury a proper understanding of the facts. But, of course, the general rule is that a witness cannot testify as to his opinion, but is limited to stating facts. Respectable authorities may be found which go nearly, if not quite, the length of sustaining the admission of the testimony which we are considering. See *Comm. v. Dorsey*, 103 Mass., 412; *Comm. v. Sturtivant*, 117 Mass., 122. But it seems to us such evidence is of a most dangerous character, especially when a witness is allowed to testify, as Dr. Piper did, that in his opinion the hair found on the wheelbarrow and that removed from the skull of the deceased were from the head of the same person. The witness had stated without objection that the hair found on the wheelbarrow was human hair. Possibly this might be said to involve a question of special knowledge, learning or experience. But the witness then described the hair, and said that from comparison of its length, magnitude and color it must, in his opinion, all have come from the same head.

That conclusion was the precise fact which the jury were called upon to determine. It is not entirely clear from the record whether the hair taken from the skull and that found on the wheelbarrow were before the court and jury, though we infer such to be the case. If so, it is obvious the jury could make the comparison for themselves, for the resemblance or marks of similarity were obvious. But, if we are mistaken in this supposition, the hair in both instances had been so fully described — the points of resemblance or identity had been so fully given — that the jury could draw their own conclusion as to whether it came from the head of the same person or not.

In a number of cases which will be found in our reports the rule has been laid down as to when and upon what questions a witness may testify to his opinion as a conclusion of fact. *Luning v. State*, 2 Pin., 284; *Burnham v. Mitchell*, 34 Wis., 133; *Oleson v. Tolford*, 37 Wis., 337; *Benedict v. Fond du Lac*, 44 Wis., 495; *Mellor v. Town of Utica*, 48 Wis., 457; *Yanke v. State*, 51 Wis., 464; *Noonan v. State*, post, p. 258. But none of these cases go the length of sanctioning the admission of such testimony as that given by Dr. Piper. We think it was clearly incompetent, and must work a reversal of the judgment.

While this result disposes of the case, it may be proper to make a few further remarks on one or two other points which were much discussed by counsel. Dr. Piper also testified as an expert in regard to examinations made by him with a microscope of certain blood stains found upon pieces of cloth and wood. He gave it as his opinion, founded upon such examination, that some of these stains were caused by human blood corpuscles. For the purpose of discrediting the witness it was proposed on the part of the defense to read opinions stated in certain medical works on this subject. The court would not permit this to be done, holding, in effect, that as Dr. Piper had not referred to any

medical work, and did not rely upon the authority of medical writers to support his views, but testified from his own knowledge and experience, it was not proper to read from medical works to contradict him. ₒThere can be no doubt of the correctness of this decision, which is sustained by the authorities referred to by Mr. Justice CASSODAY in *Stilling v. Town of Thorp*, 54 Wis., 528.

A number of objections are taken to the charge of the court given on the trial. It is perhaps sufficient to say, in answer to all óf them, that the record does not present a single exception to the charge, nor is it pretended that any was ever taken to it. But, notwithstanding this, the learned counsel for the defendant insisted that it was the duty of this court to review the charge, even though it was not excepted to, and if found incorrect in the propositions of law laid down for the guidance of the jury to reverse on that ground. That would be contrary to the uniform practice of this court since its organization. In no case, civil or criminal, has this court reviewed the charge of the trial court where no exception was taken to it. In the absence of all legislation on the subject, we do not conceive it to be our duty to change a rule of practice so long established in this and other courts. In this case the defendant was assisted by able and intelligent counsel, abundantly competent to protect his rights and secure for him a fair trial. If they did not see anything in the charge of the court which they deemed unfavorable to their client, or objectionable in law, why should this court be called upon to review it? Counsel says that it is a humane principle recognized in criminal law, especially in a case of murder, that the accused stands upon all his rights, waiving nothing which can possibly prejudice him. In the sense in which this principle is sought to be applied, it is not strictly correct. For example: an objection to the admission of improper testimony must be taken in time to be available; so must an exception to

the charge.   There are many things in the conduct of the case which the accused loses the right to object to unless he takes the objection at the proper time.   It is needless to mention them, for they will readily occur to every intelligent lawyer.   The claim, therefore, that the accused waives nothing, or that he can always insist upon and take advantage of any error in the proceedings, cannot be maintained.   Often a plea of guilty is entered by the accused and acted upon by the court.   In that case the party waives his right to a trial. We have said this much in reply to the argument, which was so seriously pressed upon us, that we could review the charge though no exception was taken to it.   But no inference must be made from this that we consider the charge erroneous in any material point.   We simply decline to review it.

To guard against any possible misapprehension, we deem it proper to say a word on a remark in the charge.   The circuit court, among other things, told the jury that their verdict must be simply murder in the first degree or not guilty, according as they should find the fact.   This same charge was given in the case of *Dickerson v. State*, 48 Wis., 288, and held by this court not to be error.   Of course what is there said in the opinion had reference to the facts and circumstances of that particular case.   There it was plain, from all the evidence, that, if the accused was guilty of the commission of any offense whatever, it was of the crime of murder in the first degree.   The charge was considered with reference to that state of facts.   But whether the charge would have been sustained had there been evidence in the case which would support a conviction of a lesser grade of homicide, is a question not decided in the *Dickerson Case.* This observation, it must be understood, has no reference to the facts or circumstances of the case before us.   It would be very improper for us to indicate any impression as to the guilt of the defendant, which we may have derived from an

examination of the evidence, and we do not do so. The *Dickerson Case* was commented on in the argument at the bar, and hence this explanatory remark as to what was intended to be decided in that case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of Outagamie county, who will hold him in custody until he shall be discharged or his custody changed by due course of law.