THE PEOPLE v. NATHAN C. HALL.

*Murder by poison—Degree of murder—Order of proof—Malice—Drawing jury—Witnesses—Separate examination—Credibility—Conviction of felony—Reading books to jury—Expert evidence.*

Murder by poisoning is murder in the first degree and a jury should be so charged where the information does not state its degree, or the mode of its commission.

Where a jury does not find that a crime is in the first degree it is error for the judge to punish it as if it were.

In prosecutions for homicide the *corpus delicti* must be shown first, so far as the testimony can be separately given, and especially so far as can be shown from *post mortem* examinations.

In a prosecution for murder proof of malice alone has no tendency to prove that death was caused by crime, until the fact of death by criminal means has been shown, proof of malice may then become relevant to show a motive.

The Jury Act of 1877 (Act 125 of 1877) requires the names of jurors to be drawn in turn from separate parcels containing names from each precinct in the county. There is also provision for ordering tales-men to be drawn from a single township where the emergencies of the term do not leave time for summoning them from the county at large. But a jury drawn three weeks before trial for a particular case of homicide is illegal if taken from only part of the townships in the county and those not adjoining the county-seat nor includ-ing the locality of the offense.

Respondent's request, in a case of homicide, that the witnesses may be examined separately and not in one another's presence, should be granted, if seasonably made.

In a criminal prosecution the names of witnesses cannot, against objec-tion, be added to the information without a showing that they were not known earlier and in time to give defendant notice in season to anticipate their presence before trial.

It is error, in trying a criminal case, to exclude questions as to the conduct of the prosecution in seeking to induce the witness to suppress testimony or volunteer improper testimony.

Experts cannot be examined upon theories that are contrary to the uncontradicted facts of the case.

No inference can be drawn against a respondent from the refusal of a witness to answer questions for fear of criminating himself.

Former convictions of felony may be shown as bearing on the credit of a witness.

Expert testimony is legally admissible on the ground, only, that ordinary jurymen have no such special knowledge as will enable them to understand the facts shown, without interpretation; it must therefore be given by living witnesses who can be cross-examined; and the reading of scientific books to the jury, as evidence in itself, is error.

Error to Oakland. Submitted April 25. Decided June 14.

INFORMATION for murder. Respondent was convicted and brings error. Reversed.

Attorney General *Jacob J. Van Riper* for the People. It is not error to allow names of witnesses to be indorsed on an information after trial is opened: *Hill v. People* 26 Mich. 499; hypothetical questions based on facts that are in evidence, are admissible in the examination of experts: *Grand Rapids & Indiana R. R. v. Huntley* 38 Mich. 537; *Clark v. Field* 42 Mich. 342; *Van Deusen v. Newcomer* 40 Mich. 90; *Grand Rapids & Ind. R. R. v. Martin* 41 Mich. 667; a trial judge may not instruct the jury as to the credibility of a witness: *McMimm v. Whelan* 27 Cal. 319; *Rice v. State* 3 Tex. App. 455; *Com. v. Barry* 9 Allen 276; *Gilliam v. Ball* 49 Mo. 249.

*Howard & Thayer* and *Thomas J. Davis* for respondent appellant. A respondent has a right to a jury drawn from all the precincts of the trial district: *Olive v. State* 11 Neb. 1; and to have witnesses examined out of each other's hearing: 1 Bish. Cr. Pro. § 1806; *Rex v. Wylde* 6 C. & P. 380; 2 Phil. Ev. 395; 1 Greenl. Ev. § 432; *Southey v. Nash* 7 C. & P. 632; efforts to suppress testimony may be

proven: 1 Greenl. Ev. § 37; *People v. Gordon* 40 Mich.
720; imaginary propositions cannot be the ground of hypo-
thetical questions to experts: *Dilleber v. Home Life Ins.
Co.* 69 N. Y. 256; 14 C nt. L. J. 158; the refusal of a
witness to answer a question cannot affect a prisoner: *Rex
v. Watson* 2 Stark. N. P. 158; *Phelin v. Kenderdine* 20
Penn. St. 354; 1 Greenl. Ev. (10th ed.) 623, 632; *Carne v.
Litchfield* 2 Mich. 340; *Knowles v. People* 15 Mich. 408;
*Rose v. Blakemore* Ry. & M. 383; *Boyle v. Wiseman* 10
Exch. 647; *Newcomb v. State* 37 Miss. 383; Tiff. Cr. Law
466.

CAMPBELL, J. Hall brings error from a judgment on
conviction for the murder of his wife. The case was twice
tried—first in June, 1881, and afterwards in October, 1881,—
the first jury having disagreed. We find in the outset a
defect which does not seem to have been noticed by the
parties, but which, under our advisory duty in criminal cases
under the statute, we cannot very well overlook in passing
upon the exceptions. The information, which conforms to
the statute and is in the usual form, merely charges murder,
without charging in what way it was committed or in what
degree. Under the statute the jury must find the degree of
the offense, and it cannot be treated as murder in the first
degree unless expressly so found. Murder by poison, under
the statute, is always murder in the first degree, and the
jury should have been so charged. They were, however,
by this charge left at liberty to find the degree, and did not
find it to be the first degree. The sentence, however,
expressly treated it as murder in the first degree, not only
by so naming it, but also by inflicting the statutory punish-
ment for that crime. If this error had been assigned, we
might have been compelled to determine to what extent the
proceedings could be opened or reversed. As there are
other defects which must lead to a new trial, we need not
now go further in this discussion beyond the suggestion
that this is only one of several indications that the trial
lacked some of the elements of a calm judicial proceeding,

and that matters appear to have been lost sight of which the rules governing the administration of justice required those conducting the prosecution to keep in mind.

The first of these, and one which in several different ways was brought to the attention of the court below, but ruled against, was the rule which requires the *corpus delicti* to be shown, before any other testimony is directed against the prisoner. In many and perhaps in most cases the order of proof is not very essential. But in cases of homicide, and in others where justice demands it, the prosecution should not be allowed to proceed further until the death and its character shall have been shown, as far as the testimony can be separately given, and especially so far as can be shown from the *post mortem* examinations. Under our system of informations the prosecution must always have knowledge, in advance of the trial, concerning the case intended to be made out, and there can be no good reason for pursuing the course which was allowed to be taken here. Instead of showing in the outset the death of Mrs. Hall, the examinations of her remains and their several analyses, and the medical opinions, indicating or not indicating death by poison, the first testimony introduced was for the only and obvious purpose of creating a prejudice against the accused by raising suspicions—which this particular testimony was not legally sufficient to establish—that he had been at some former period intimate with another woman. The testimony did not tend to prove any lack of harmony or kindness between the prisoner and his wife before her death; but had it done so, it was improper to show it until the evidence that she had been poisoned and died from poison had been introduced. All the malice imaginable is no proof in itself tending to show that death was caused by crime. When there is legal evidence leading to the belief that homicide has been committed, the motive of the criminal becomes important, and the relations of parties may therefore become relevant. This difficulty was not confined to the question of the order of proof, for in what was done in charging and in refusing to charge, the jury did not receive that careful

instruction which the circumstances called for, against allowing the crime itself to be presumed or to be ascertained by any but distinct and adequate proof.

Before referring to the more definite defects in the proceedings at the trial, some notice must be taken of the preliminary proceedings.

We have not sufficient facts before us to render it proper to say whether the venue should have been changed on the showing made, which is not brought up with the record. But the proceedings to summon jurors were, we think, in violation of the jury law of 1877. That law, in order to prevent unfairness or inequality in the distribution of jurors, required the names of jurors from each precinct to be kept in separate parcels, and one name to be drawn from each, before a second name should be drawn from any, and so successively in like manner however many jurors should be drawn. Laws 1877, pp. 113, 114. There is only one case in which a different rule is permitted. It is provided by section 32 (amending Comp. L. § 6001) that when grand or petit jurors have not been summoned, or a sufficient number of qualified jurors shall fail to appear, the court may cause a sufficient number to be summoned forthwith, and may for the purpose of obtaining a jury or talesmen near the county seat, direct from which township or supervisor district such jurors shall be drawn. The evident object of this is to enable the court to call neighboring jurors when the pressure of business will not allow time to summon them from the county at large. This section before its amendment left it in the power of the court to allow the sheriff to summon such jurors as he chose, or to have jurors drawn from the county at large. Its object was explained in *People v. Jones* 24 Mich. 215, as designed to meet the exigencies of the term, and not of particular causes. In the present case the jury was ordered to be drawn from eleven specified townships, (out of the 25 townships, and such other supervisor districts as existed in Pontiac,) more than three weeks before the time of their appearance, and therefore with a much longer interval than that allowed for summon-

ing the ordinary panel for a term. The order does not purport to be made for the purpose of getting jurors near the county seat, but on the contrary does not require any jurors to be drawn either from the city or township of Pontiac, nor from the four adjacent towns lying south, south-west, west, and north-west,—while the towns actually selected included six towns separated from Pontiac township by entire intervening tiers of towns, and distant from six to over fifteen miles at the nearest point of contact. The order excluded the entire vicinage of the alleged offence, not only leaving out the town of Springfield, but every one of the eight towns surrounding it, two of which border or corner on Pontiac. The order was not made by the judge of his own motion for general purposes, but on the suggestion of the prosecuting attorney for this particular case, in which it is entitled. The jury was therefore neither a jury of the vicinage, nor a jury of the county at large, nor one near the county seat, nor one desired by the judge himself for the general purposes of the term. It was therefore not sanctioned by law.

The defendant before the testimony was put in requested that the witnesses might be examined separately and not in presence of each other, but his request was denied. There is no difference of opinion among the authorities on the point that such a request, seasonably made, should not be refused. There is some difference as to whether such a refusal, standing alone, should necessarily be held illegal so as to require a reversal. Without going so far, inasmuch as we may dispose of the case on the other grounds, we need only say that there is nothing in this record which tends to show that the request was not a proper one to be granted.

The court allowed the names of several witnesses to be added to the information during the trial, under objection, without any showing that they were not known earlier and in time to give defendant notice in season to anticipate their presence before trial. The statute is explicit that this shall be done before trial where witnesses are known. § 7938. This is not a mere formality; and wherever it has

been provided for by statute it has been treated as a substantial right. *Reg. v. Frost* 9 C. & P. 147; *Rex v. Lord Gordon* 2 Doug. 591. Two of these witnesses were the chemists who were employed by the prosecution to make an analysis of portions of the body of the deceased. Others of them were called to testify concerning the preparations for making it. One was called on to testify to alleged conversations with defendant more than a month before the trial.

It appeared by the testimony of Drs. Prescott and Duffield that they were employed by the prosecution about three months before the second trial, and it appeared further that their testimony was the chief testimony, and practically the only testimony tending to show arsenic in the body. The others were of less consequence.

So far as Hickey is concerned it appeared by his own cross-examination that he was confined in jail for the felony of breaking and stealing $500 from a safe, and had served a term in State's prison for a previous felony several years before. From a careful examination of the record we think it at least highly probable that the conviction was had on this man's testimony. It is very evident that if the defendant had been able to hunt up the history of such a witness, the search would have been important.

In regard to the chemists the facts show that on the first trial the testimony failed to convict, and that the analysis which was made previously discovered no poison. After the failure of the first trial the body was examined again, being found in another place under very suspicious circumstances, with no evidence except that of Hickey distinctly bringing the removal home to defendant. There was testimony from the medical witnesses having a tendency to show that the poison last found might have been put in the body after death; and there were facts showing bad blood between defendant and some of his neighbors who were somewhat zealous against him. Practically the case on the second trial was a new case, and the defendant was not informed of the witnesses to it until the trial began. This was an unfair suppression, in contravention of law.

We think it was error to prevent witnesses from answering questions as to conduct of the prosecution in seeking to induce them to suppress testimony or volunteer improper testimony not admissible and not asked for. There is no more reason for exempting the prosecution than the defence from scrutiny concerning tampering with witnesses.

There were several questions answered by medical experts upon theories put to them which were contrary to the positive and uncontradicted facts. Such questions were improper and misleading.

Some other rulings might be referred to, but we do not think it important to dwell upon them, except as to some refusals to charge.

A witness Clifford was called ostensibly to show that Hall was concerned in the removal of his wife's body from the grave-yard. He stated that Hall did not know it was to be put where it was found, but to a series of questions concerning Hall's complicity in it, he refused to answer on the ground that it might criminate him. The court refused to tell the jury they had no right to infer anything against Hall from Clifford's silence. This was clearly wrong. Clifford had not testified to any fact whatever indicating that he or any other person named either removed the body or had any part in it. He refused to answer at all beyond the single answer that Hall did not know where it was to be placed. If moved without Hall's consent it would have been a crime. If otherwise it might or might not be, according to its purpose. If the silence of a witness can be treated as evidence against a party who cannot compel him to answer, it would not be difficult to make out a case against any one on mere insinuations. It was the duty of the court to caution the jury against this, but this was not only refused but that removal was dwelt on far enough to lead them to regard it as significant, which rendered the caution itself more necessary.

We think also that it would have been highly proper that the court should, when requested, have called the attention of the jury to Hickey's position as affecting his credit.

Formerly he could not have been sworn at all.   The statute did not abrogate entirely the effect of conviction of an infamous crime on a witness, but still allows it to be shown as a distinct fact bearing on his credit.   Comp. L. § 5966.

We observe that resort was had to reading medical books to the jury, the record not showing, however, what matters were thus laid before them.   If this was anything it was evidence, and probably evidence which was used with some effect.   The practice is not permissible.   Scientific or expert testimony must be given by living witnesses who can be cross-examined concerning their means of knowledge and can explain in language open to general comprehension what is necessary for the jury to know.   The only legal reason for allowing the evidence of .opinions is found in the presumption that an ordinary juryman or other person without special knowledge could not understand the bearing of facts that need interpretation.   Medical books are not addressed to common readers, but require particular knowledge to understand them.   Every one knows the inability of ordinary persons to understand or discriminate between symptoms or groups of symptoms, which cannot always be described. to those who have not seen them, and which with slight changes and combinations mean something very different from what they mean in other cases.   The cases must be very rare in which any but an educated physician could understand detached passages at all, or know how much credit was due to either the author in general or to particular parts of his book.   If jurors could be safely trusted with the interpretation of such books, it is hard to see on what principal living witnesses would be required.   Scientific men are supposed to be able from their study and experience to give the general results accepted by the scientific world, and the extent of their knowledge is tested by their personal examination. But the continued changes of view brought about by new discoveries in most matters of science, and the necessary assumption by scientific writers of some technical knowledge in their readers, render the use of such works before juries— especially in detached portions and selected passages—not

only misleading but dangerous. The weight of authority as well as of reason is against their reception.

While we feel it our duty to direct a reversal and a new trial, if the prosecuting authorities think it proper to have one, we think the case is not of such a character that the prisoner should be deprived of bail.

The judgment must be reversed and the prisoner remanded to the custody of the sheriff of Oakland county, with the right at any time of being let to bail in the sum of $3000.

COOLEY and MARSTON, JJ. concurred.