## BRADY v. SHIRLEY *et al.*

1. On an issue as to the identity of a horse, a work on veterinary science is not admissible to inform the jury how to determine a horse's age from an examination of the teeth.

2. On an issue as to the identity of a horse, it was error to permit the jury to view not only the horse in controversy, but others which were not involved in the suit.

(Opinion filed May 4, 1901.)

Appeal from circuit court, Fall River county, HON. LEVI McGEE, Judge.

Action in claim and delivery by George W. Brady against Samuel Shirley and another. From a judgment in favor of defendants, and from an order denying a new trial, plaintiff appeals. Reversed.

*Kellar & Kellar* and *Walter L. Anderson,* for appellant.

The trial court erred in permitting the jury to view and examine the horse in controversy, and divers other horses. 12 Am. & Eng Enc. of Law. 368; Dowd v. Guthrie, 13 Bradwell, 653; Com. v. Webster, 5 Cushing, 295, 298; Smith v. State, 42 Tex. 444; Farwell v. Sturgis W. W. Co., 73 N. W. 916; Washburn v. Railway Co., 59 Wis. 365; Hanawalt v. State, 64 Wis. 84; 3 Am. & Eng. Enc. of Law, 885; 21 Am. & Eng. Enc. of Law, 1030; State v. Danforth, 48 Iowa 43; Keniston v. Rowe, 16 Me. 38; Overlock v. Hall, 81 Me. 348; Risk v. State, 19 Ind. 152; Reitz v. State, 33 Ind. 187; LaMott v. State, 128 Ind. 123; U. S. v, Collins, 1 Cranch, 592; Robnett v. People, 16 Ill. App. 299; Ingram v. State, 24 Neb. 33; People v. Carney, 29 Hun. 47.

The trial court erred in permitting the introduction of testimony as to the resemblance of the horse in controversy to its al-

leged sire. Keniston v. Rowe, 16 Me. 38; Jones v. Jones, 45 Md. 144; Eddy v. Gray, 4 Allen 435; Young v. Makepeace, 103 Mass. 50; Clark, v. Bradstreet, 80 Me. 451; U. S. v. Collins, 1 Cranch 592; Knoll v. State, 55 Wis. 249.

The trial court erred in permitting the introduction in evidence of the treatises upon veterinary science. Ins. Co. v. Brott, 55 Md. 200; Ins. Co. v. Cheever, 36 O. St. 201; Payson v. Everett, 12 Minn. 216; Whiton v. Ins. Co., 109 Mass. 24; Tucker v. McDonald, 60 Miss. 460; 7 Am. & Eng. Cyc. of Law, 513; 9 Am. & Eng. Cyc. of Law, 887; 8 Cyc. of Plead. & Prac.768; Lawson on Expert Ev. 169; Wharton on Ev. 665; Rogers on Expert Test. 237, 243; Rice on Ev. 1255; 1 Greenleaf on Ev. Sec. 497; Bixby v. Omaha etc. Ry. Co. 75 N. W. 182; Boehringer v. Richards Med. Co., 29 S. W. 508; Johnston v. Richmond, 22 S. E. 694; VanSkike v. Potter, 73 N. W. 295; Boyle v. State, 57 Wis. 472; Epps v. State, 1 N. E. 451; Stilling v. Town of Thorpe, 54 Wis. 528; U. P. Ry. Co. v. Yates, 79 Fed. 584; Ashworth v. Kittredge, 12 Cushing 193; Gallagher v. Railroad, 6 Pac. 869; Broadhead v. Wiltse, 35 Ia. 429; State v. Gillick, 10 Ia. 98.

*Wilson & Wilson,* for respondents.

The identification of the horse in controversy to be determined from his age, stock and brands, on which questions the issues were sharply drawn, the inspection of the horse, together with his alleged parents furnished the best possible evidence. Warlick v. White, 76 N. C. 179; Thompson on Trials, vol. 1, sec. 856; State v. Smith, 6 N. W. 153; State v. Woodruff, 67 N. C. 89; 12 Am. & Eng. Ev. of Law, 368.

For the purpose of showing what the opinions of the best and

ablest minds are upon the question at issue, viz: the age of the horse, and also for the purpose of discrediting the testimony of experts who claim to be familiar with them, the printed books were admissible in evidence. Quackenbush v. Railroad, 35 N. W. 523; People v. Sessions, 26 N. W. 292; Pinney v. Cahill, 12 N. W. 862.

CORSON, J. This is an action in claim and delivery for the possession of a young horse. Verdict and judgment for the defendants, and the plaintiff appeals.

The horse was claimed by both the plaintiff and the defendants, and the case turns upon the question of the animal's identity. Numerous errors are assigned, only two of which we shall discuss in this opinion, namely, that the court erred in admitting the works of certain veterinary surgeons to be read to the jury, and that the court erred in permitting the jury to examine the horse in question, and divers other horses not in controversy in this action. On the trial the defendants were permitted, over the objection of plaintiff, to read the above named works to the jury as evidence. These works were written on the subject of domestic animals, including the horse. The evident object and purpose of the introduction of these works was to inform the jury on the question of the dentition of the horse, in order that the jury might determine whether or not the horse in question was of the age contended for by the defendants. It is contended on the part of the appellant that these books were inadmissible for three reasons: (1) They were all works of inductive science, and did not belong to the class of exact science, which works are sometimes admissible; (2) they were not in any manner shown to be standard authorities, or even of good repute; (3) they were introduced for the purpose of proving age by the animal's teeth. This was a subject for oral evidence

on the part of witnesses, and a number of witnesses testified upon this subject on the part of the defendants. With the exception of a class of works, such as almanacs, astronomical calculations, tables of life expectations in matters of insurance and the like, published works are inadmissible as evidence before the jury. State v. Sexton, 10 S. D. 127, 72 N. W. 84; People v. Millard, 53 Mich. 75, 18 N. W. 562; People v. Hall, 48 Mich. 490, 12 N. W. 665; People v. Wheeler, 60 Cal. 581; Com. v. Wilson, 1 Gray 337; Huffman v. Click, 77 N. C. 55; Knoll v. State, 55 Wis. 249, 12 N. W. 369; Boyle v. State, 57 Wis. 472, 15 N. W. 827. See, also, State v. Morris, 47 Conn. 179; Schell v. Plumb, 55 N. Y. 598; Sauter v. Railroad Co., 66 N. Y. 50; 9 Am. & Eng. Enc. Law (2d Ed.) 886, and cases cited. Medical works, even if of respected authority, are not competent evidence if objected to by the opposite party. In Ashworth v. Kittridge, 12 Cush. 193, the supreme court of Massachusetts, speaking by SHAW, C. J., says: "The court are of opinion that it was not competent for counsel for the plaintiff, against the objection of the other side, to read medical books to the jury. It was formerly practiced rather by general indulgence and tacit consent of parties than in pursuance of any rule of law; but it has been frequently decided that it is not admissible, and we now consider the law to this effect well settled, both upon principle and authority. Where books are thus offered, they are, in effect, used as evidence, and the substantial objection is that they are statements wanting the sanction of an oath; and the statement thus proposed is made by one not present, and not liable to cross-examination. If the same author were cross-examined and called to state the grounds of his opinion, he might himself alter or modify it, and it would be tested by a comparison with the opinions of others. Medical authors, like writers in other departments of science,

have their various and conflicting theories, and often sustain and defend them with ingenuity. But, as the whole range of medical literature is not open to persons of common experience, a passage may be found in one book favorable to a particular opinion, when perhaps the same opinion may have been vigorously contested and perhaps triumphantly overthrown, by other medical authors, but authors whose works would not be likely to be known to counsel or client, or to court or jury. Besides, medical science has its own nomenclature, its technical terms and words of art, and also common words used in a peculiar manner, distinct from their received meaning, in the general use of the language. From these and other causes a person not versed in medical literature, though having a good knowledge of the general use of the English language, would be in danger, without an interpreter, of misapprehending the true meaning of the author; whereas a medical witness would not only give the fact of his opinion and the grounds upon which it is formed, with the sanction of his oath, but would also state and explain it in language intelligible to men of common experience. If it be said that no books should be read except works of good and established authority, the difficulty at once arises as to the question what constitutes 'good authority'; more especially whether it is a question of competency to be decided by the court whether any particular book shall be received or rejected, or a question of weight of testimony, so that any book may be read, leaving its force, weight and effect to the jury. Either of the alternatives would be attended with obvious, if not insuperable, objections." In Huffman v. Click, *supra,* the court, in speaking of the admission of such works, says: "Such treatises are based on data constantly shifting with new discoveries and more accurate observation, so that what is considered a sound induction today

becomes an unsound one tomorrow.* * * The authors of such works do not write under oath: The books themselves are therefore often speculative, sometimes mere compilations, the lowest form of secondary evidence; and as the authors cannot be examined under oath, the authorities on which they rely canot be investigated, nor their process of reasoning be tested by cross-examination, such writings are nothing more or less than hearsay proof of that which living witnesses could be produced to prove," In People v. Hall, *supra*, the supreme court of Michigan says: "Scientific or expert testimony must be given by living witnesses, who can be cross-examined concerning their means of knowledge, and can explain in language open to general comprehension what is necessary for the jury to know." See; also, Lawson Pres. Ev. 170; Boyle v. State, *supra;* Bixby v. Bridge Co., 105 Iowa, 293,75 N. W. 182, 43 L. R. A. 533; 8 Enc. Pl. & Prac. 768. It is quite clear, both on weight of authority and principle, that the works which the defendants were permitted to read in evidence before the jury were clearly inadmissible, and the court therefore erred in the admission of this evidence.

It seems equally clear, also, that the court erred in permitting the jury to view not only the horse in controversy in this action, but other horses, which were not directly in controversy in the action. It is the theory of our system of practice that cases must be tried by juries who have no knowledge of their own as to the issues to be tried, and that the decision must be based upon evidence given before the court and jury, and such evidence as can be incorporated into the record, and be reviewed by the trial and appellate courts. Juries, therefore, have no right to inspect or receive in evidence that which cannot be presented to the appellate court for review. In the case at bar, as we have seen, the jury were permitted to in-

spect the animals—not only the horse in controversy in the action, but other horses presented for inspection on the part of the defendants. To what extent, therefore, their verdict was influenced by such evidence, and to what extent it was influenced by the sworn evidence in the case, neither the court below nor this court is able to say. For aught that appears in the record, their verdict may have been based entirely upon the knowledge they acquired by the examination of these horses. The learned counsel for the respondents has failed to call our attention to any case where such an examination by the jury has been permitted. In 12 Am. & Eng. Enc. Law, 368, the author of the article on jury trial, in speaking of this question, says: "And in other cases, although the early English statutes would seem to afford abundant foundation, it has been held that a view cannot be ordered over the objection of a party to the suit where no statutory authority is conferred." In this state no statutory authority seems to exist for the view and examination had in this case. In criminal cases authority is given to the court to permit a view of the premises or place in which the offense is charged to have been committted, or in which any other material fact occurred. Section 7397, Comp. Laws. In Farwell v. Water Co., 10 S. D. 421, 73 N. W. 916, this court, in speaking of a view made by the court in a civil action, says: "But, as the law has made no provision for such an examination by the judge, and has not provided any method by which the result of such an examination can be reviewed by this court, we are compelled to disregard it in the consideration of the case, and to look only to the evidence presented by the record." We are of the opinion that the ruling of the court in permitting the jury to examine the horses was clearly error. The judgment and order denying a new trial are reversed, and a new trial granted.