## BRADY v. SHIRLEY *et al.*

1. On the question of identity of a horse, plaintiff claiming it was the foal of a certain mare, and sired by a half-breed Norman stallion, and defendants claiming that it was the foal of a certain mare, with a strain of thoroughbred, and sired by a certain Hambletonian stallion, the opinions of persons familiar with such horses and their colts are admissible.

2. In the absence of a showing of abuse of discretion it is not error for the court, after making a rule limiting the number of witnesses on a question to three witnesses on a side, to permit defendants to examine more than that number.

(Opinion filed December 21, 1904.)

Appeal from circuit court, Fall River county; Hon. LEVI McGEE, Judge.

Action by George W. Brady against Samuel Shirley and another. Judgment for defendants. Plaintiff appeals. Affirmed.

*Charles S. Eastman* and *Walter L. Anderson,* for appellant.

The resemblance of a colt to its alleged sire and dam is too much a matter of fancy to be competent as evidence, and those

decisions which regard the matter of resemblance as proper proof, none hold that such resemblance can be shown by opinion evidence. Keniston v. Rowe, 16 Maine 38; Jones v. Jones, 45 Maryland 144; Eddy v. Gray, 4 Allen 435; Shorten v. Judd, 56 Kansas 43, 42 Pac. 337; Com. v. Webster, 5 Cush. 295. Young v. Makepeace, 103 Mass. 50; Clark v. Bradstreet, 80 Maine 454, 15 Atl. 56; Hanawalt v. State, 64 Wis. 84, 24 N. W. 489; U. S. v. Collins, 1 Cranch C. Ct. 592; Gaunt v. State, 50 N. J. L. 490, 14 Atl. 600; People v. Carney, 29 Hun. 47; Guiterman v. Liverpool, etc., Co., 9 Daly (N. Y.) 119; Petrie v. Howe, 4 Thomp. and C. (N. Y.) 85; Paulk v. State, 52 Ala. 427; Rutledge v. Carruthers, Tait's L. of Ev. 443.

*Wilson & Wilson,* for respondents.

On the question of identity of a horse where the breed is under consideration, the opinions of persons familiar with such horses and their colts are admissible. Am. & E. E. of Law, 2 Ed. Vol. 3, page 885; Clark v. Bradstreet, 80 Me. 454; Jones on the Law of Evidence, Section 362; Hare v. Board of Education, 113 N. C. 9; State v. Ward, 61 Vt. 153; State v. Woodruff, 67 N. C. 89; Abbott's Trial Brief, 2 Ed. 524-525.

CORSON, P. J. This case was before us on a former appeal, and was reversed for the reasons stated in the opinion, which is reported in 14 S. D. 394, 85 N. W. 1002. The action is one in claim and delivery to recover the possession of a young bay horse claimed by the plaintiff, and which is also claimed by the defendants. The identity of the horse was the only question in issue. The plaintiff claimed that he owned the dam and sire of the colt when the colt was foaled; that the dam was a flea-bitten colored gray mare, and the sire a

half-grade Norman stallion, and that the colt was foaled in May, 1894. The defendants claimed that they raised the colt from their sorrel mare known as ''Queen,'' with a strain of thoroughbred, and that he was sired by a well-known dark bay registered Hambletonian stallion, familiarly known as ''Kay,'' belonging to the defendants, and that the colt was foaled in May, 1895.

' The principal question presented is as to the admissibility of certain evidence introduced on the part of the defendants. On the retrial a number of witnesses were introduced on the part of the defendants, and their evidence admitted over the objection of appellant, and, as the questions and answers were very similar, it will only be necessary to give the testimony of two of the witnesses as illustrating the nature of the evidence admitted and to which exceptions were taken. Albert Dryden, being sworn on behalf of the defendants, and having testified that he had seen the horse in controversy, and knew the stallion Kay, and that he was acquainted with divers colts of the stallion Kay, the stallion having been bred for a number of years by his brother, was asked the following question: ''Now, from the acquaintance you have had with this stallion Kay and with his colts generally, and the examination you made of the horse in controversy, I will ask you to state what is your opinion as to this horse in controversy being a colt sired by the horse Kay;'' to which he answered, ''I would say that he was.'' Nat Dryden, a witness on behalf of the defendants, having testified that he had experience in the handling of horses for many years, that he had owned and bred for a number of years the stallion Kay, that he had seen a great many of his colts, that he had seen the gray stallion and flea-bitten

colored mare claimed by the plaintiff to be the sire and dam of the horse in controversy, and that he knew the sorrel mare Queen, owned by the defendants, testified as follows: "Now, you may state whether or not there are points of similarity between the horse in controversy and the stallion Kay, and, if so, state what they are;" to which he answered: "They are nearly exactly the same. This horse here is a little lighter, but other ways they are nearly exactly the same, and their eyes and ears and tails nearly exactly alike. Their heads are nearly exactly alike. Their necks a great deal alike. This horse may be a little heavier build than the old horse. Their carriage and movements the same exactly. Step of the horse as they step off are very much alike." "State from your experience as a horseman whether, in your judgment, a gray horse, such as that gray stallion of Brady's, and a gray mare would produce a distinctly bay horse, such as this horse in controversy;" to which he answered, "I don't think it would be possible." "State if there are points of similarity between this mare Queen and this horse in controversy;" to which he answered: "There are some; not a great deal. The move and the neck and shape of the hips are a great deal the same." "I will. ask you to state from an acquaintance of his horse Kay and with this horse in controversy, what you would say as to the horse here in controversy as to being a colt from the stallion Kay?" to which he answered, "I should say that he was." It is contended by the appellant that this evidence was inadmissible, for the reason that it was the opinion of nonexpert witnesses, and not the statement of facts. It is insisted on the part of the defendants and respondents that this evidence was admissible upon the ground that it tended to prove

that the horse in controversy was of a different breed and belonged to a different class of horses from any that could naturally have been produced by the gray half-breed Norman stallion and the mare owned by the plaintiff. The appellant relies upon the familiar principle in the law of evidence that the opinions of witnesses are, in general, irrelevant and inadmissible. While this is the generally accepted rule, there are many exceptions. Mr. Jones, in his work on evidence, says: "But without reference to any recognized rule or principle, all concede the admissibility of the opinions of nonprofessional men upon a great variety of unscientific questions arising every day and in every judicial inquiry. These are questions of identity, handwriting, quantity, value, weight, measure, time, distance, velocity, form, size, age, strength, heat, cold, sickness and health, questions concerning various mental and moral aspects of humanity, such as disposition and temper, anger, fear, excitement, intoxication, veracity, general character and particular phases of character, and other conditions and things, both moral and physical, too numerous to mention. * *. * Opinions of witnesses derived from observation are admissible in evidence when, from the nature of the subject under investigation, no better evidence can be obtained." 2 Jones on Evidence, § 368. In the case of Sydleman v. Beckwith, 43 Conn. 9, the Supreme Court of Connecticut, in speaking upon this subject, uses the following language: "The general rule is that witnesses must state facts, and not their individual opinions; but there are exceptions to this rule as well established as the rule itself. Besides the case of experts where the subject-matter requires special study, skill, and experience, the opinions of common observers in regard to common appear-

ances, facts, and conditions have been received as evidence in a great variety of cases. Thus such opinions have been received in questions of identity as applied to persons, animals, handwriting, and sounds, and in estimating the size, weight, distance and color of objects." That learned court then pro· ceeds to enumerate a very large number of exceptions, and concludes as follows: "These exceptions to the general rule are allowed on the grounds of necessity, where the subject of inquiry is so indefinite and general as not to be susceptible of direct proof, or where the facts on which the witness bases his opinion are so numerous or so evanescent that they cannot be held in the memory and detailed to the jury precisely as they appeared to the witness at the time." It would seem that the opinions of the witnesses in this case might properly come within the exception that opinions of witnesses are admissible as to race or color as applied to individuals. The rule applicable to this exception is thus stated by the Supreme Court of Maine in the case of Clark v. Bradstreet, 80 Me. 454, 15 Atl.56, 6 Am. St. Rep. 224, where, after citing and discussing a number of decisions, the court says: "No one will doubt the propriety or reason upon which these decisions are based when the question is one of race or color, for it is well understood that there are marked distinctions, physical and external, between the different races of mankind, which may enable men of ordinary intelligence and observation to judge whether they are of one race or another." State v. Woodruff, 67 N. C. 89; A. & E. E. Law, p. 886; Hare v. Board of Education, 113 N. C. 9, 18 S. E. 55. It is a well-known fact, of which the court will take judicial notice, that there are distinctive breeds of horses, each having its own peculiarities, and that it is not difficult for

a person of ordinary intelligence and observation, familiar with the subject of the breeding of horses, to distinguish between horses of the different breeds, where they are so clearly defined as in the case of the Norman and Hambletonian stock, and especially in the case of horses sired by some well known stallion, as the stallion Kay seems to have been. While the witnesses could not properly be termed experts in the sense in which that term is used in treatises on the subject of evidence, they nevertheless, by reason of their familiarity with the horses bred by that stallion, were competent to testify that in their opinion the horse in controversy was sired by the stallion Kay. This evidence would also seem to be admissible under the rule admitting evidence of the opinion of witnesses under many of the other exceptions, such as the opinion that a horse appeared well and free from disease, or that a horse was not safe and kind. Sydleman v. Beckwith, supra. While evidence of a similarity of appearance as between the horse in controversy and the stallion Kay might not have been admissible if the question of breed was not also involved, yet, when the question was involved, there would seem to be no objection to the evidence of a person shown to be familiar with the different breeds of horses in giving his opinion as to the breed to which the horse in controversy belongs. Taking this view of the evidence, we are clearly of the opinion that it was admissible. Again, the evidence objected to would seem to be admissible upon the ground that it was the best evidence obtainable in a case like the one at bar, when the brand was not distinguishable. It is a matter of such public notoriety as to come within the rule that the court will take judicial notice that in the western part of the state colts are foaled upon

large horse ranches, and are not stabled until of age to be broken and used, and hence, if the brand is obliterated, or not distinguishable, it is exceedingly difficult, and in many cases impossible, to prove the ownership of young horses except by such evidence as was objected to in this case.

It is further contended that the court erred in admitting more than three witnesses on the part of the defendants as to the identity of the horse in controversy, as the court had made a rule limiting the number of witnesses upon this question to three witnesses on a side; but, so far as the record discloses, we cannot say that the court abused its discretion in permitting defendants to examine more than three witnesses.

These views lead to the conclusion that the court committed no error in admitting the testimony excepted to, and the judgment of the court and order denying a new trial are therefore affirmed.