[No. 5311.]

[No. 2949 C. A.]

## The Denver & Rio Grande Railroad Company v. Mitchell.

**1.   Railroads—Damages—Accident at Crossing—Evidence.**

In an action against a railroad company for injuries to a traveler at a crossing, evidence reviewed and held sufficient to sustain a finding that defendant's servants were negligent in failing to stop the train after discovering plaintiff's peril.—P. 46.

**2.   Damages—Personal Injuries—Actions—Pleading and Proof.**

In an action for personal injuries caused by negligence, evidence of injuries to plaintiff's lungs is admissible under a complaint alleging injuries to other organs, and a general allegation that plaintiff received great personal injuries, without specifying their location.—P. 47.

**3.   Appellate Practice—Practice in Civil Actions—Admission of Evidence—Harmless Error.**

Where the evidence in an action for injuries at a crossing showed that there was no obstruction between a runaway horse on which plaintiff was riding and the cab of defendant's engine, and defendant's fireman testified that he saw the situation but did not think the horse was running away until it was too late to stop the train, defendant was not prejudiced by the court allowing one of plaintiff's witnesses to testify that, in the position the fireman occupied, he could have seen and known that the horse was running away, although the testimony might be objectionable as being merely a conclusion or opinion.—P. 48.

**4.   Same.**

Where there was evidence that defendant's train, which injured plaintiff at a crossing, was not stopped as soon as it might have been, and the engineer testified that the shortest distance in which such a train could be stopped was about a train length, the defendant was not harmed by the court allowing the engineer to be asked on cross-examination, "If you can stop a moving train in the length of a train, and you whistled down brakes and applied the air three or four telegraph poles south of the crossing, how do you account for the fact that the train did not stop until the train got three or four telegraph poles north of the crossing?" although the ultimate fact of whether the train was stopped within a reasonable time and distance was one for the jury, since, in the light of this evidence, such a question was pertinent; moreover, his answer, "I think

I said about a train length, more or less," could not have harmed defendant.—P. 49.

5.  **Appellate Practice—Objections Raised First on Appeal.**

Objections to evidence cannot be raised for the first time on appeal.—P. 50.

6.  **Practice in Civil Actions—Witnesses—Impeachment—Inconsistent Statements.**

Statements made by members of a train crew some time after the accident, although not part of the res gestae, are admissible for the purpose of impeachment when inconsistent with their testimony.—P. 50.

7.  **Same.**

The statement out of court of the conductor of a train as to what the crew thought about the plaintiff's peril, made in the presence of the other members of a train crew and not denied by them, is admissible to affect their inconsistent testimony, although he did not see plaintiff's situation.—P. 50.

*Appeal from the District Court of Rio Grande County.*

*Hon. Charles C. Holbrook, Judge.*

Action by Ivy May Mitchell against The Denver & Rio Grande Railroad Company.  From a judgment for plaintiff, defendant appeals.          *Affirmed.*

Messrs. WOLCOTT, VAILE & WATERMAN and Mr. E. N. CLARK (Mr. WM. W. FIELD, of counsel), for appellant.

Mr. JAMES P. VEERKAMP, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an action for damages for personal injuries.  The jury returned a verdict in plaintiff's favor for $300, on which judgment was entered.  Defendant appeals.

The complaint is drawn upon the theory that, although a railway company, while engaged in running its trains in country districts in the usual manner over its track which runs along and parallel with

a public highway, is not obliged to keep a lookout to ascertain the condition of travelers thereon; yet, after it has, or by the exercise of ordinary care might have, discovered that such travelers are in a perilous situation and likely to be injured by the operation of the train, it then becomes the duty of the railway company to exercise ordinary care to avoid the consequent impending injury to such travelers. Plaintiff says that her cause of action, based upon such a breach of duty by a railroad company, has been established; the defendant asserts the contrary.

The plaintiff was riding a horse on a public highway in Conejos county along, and parallel with, the railroad track of the defendant, which there runs in a northeasterly and southwesterly direction. As plaintiff rode over the track from the southeasterly side on a private crossing to the public highway, and headed her horse northeasterly, a heavy freight train of defendant, about a mile distant and drawn by two locomotives, was coming toward her from the southwest. Soon after she crossed the railroad track her horse galloped at a moderate gait, and as the train, going in the same direction, got opposite to her, the horse took fright, apparently from the noise, or operation of the train, and began to run faster. Plaintiff's home was situate near, and on the southeasterly side of, the railway track about half a mile away from the point where she first crossed it, but the train crew did not know her, or where she lived. There was a private crossing over the track extending from the highway to her home, and as the horse neared this crossing he was about even with, or a little in advance of, the forward locomotive. Plaintiff was unable to control the animal, and as he got opposite this private crossing he suddenly swerved to the right and ran over it directly in front of the engine, and plaintiff was thrown to the ground and

received the injuries for which this action is brought. The grounds urged by defendant for reversal are: (1) that the evidence was not sufficient to show that defendant was guilty of the negligence charged; (2) that the court erred in its rulings upon the admission of testimony.

In its charge to the jury, with which neither party finds fault, the court, among other things, said that, in the circumstances disclosed by the evidence, defendant was not required to be on the lookout to discover the condition in which plaintiff was at the time, and that it owed her no duty until it actually saw or discovered, or by the use of reasonable diligence could have discovered, that the horse on which she was riding was turning, or attempting to run, in front of the engine, and that if, after the horse manifested such an intention, there was not time to stop the train so as to prevent collision with the horse, plaintiff was not entitled to recover. The jury was also fully advised as to the burden of proof, and what was necessary for plaintiff to prove before a verdict in her favor could be given.

The evidence of plaintiff, which in some particulars was contradicted by defendant's evidence, tended to show that the fireman of the forward engine was sitting in the cab in plain view of plaintiff from the time she first crossed the track, the public road being not more than fifty feet distant from the railroad track, where he had full opportunity to see that plaintiff had lost control of the horse. Several witnesses for plaintiff testified to this condition of affairs, and their evidence was of such a nature that the jury were warranted in finding that such control had been lost, and that plaintiff was doing all in her power to regain it, and was pulling the left rein to keep the horse from the railroad track, and that defendant's fireman discovered and saw these condi-

tions in time to warn the engineer to stop, or check the speed of the train, without colliding with the horse, but that the fireman failed to exercise such ordinary care in giving the appropriate signal to the engineer, and plaintiff was without fault.

The engineer was on the opposite side of the engine from the public highway, and did not see plaintiff, and was not required to take any precautions to secure her safety until after he was notified by the fireman of the situation. The fireman testifies that at first he did not think the horse was running away, but supposed, from the attitude of plaintiff and the surrounding circumstances, that she still retained full control; but shortly before the train reached the private crossing where the accident occurred, he concluded that the horse was running away, and at once signaled the engineer to check or stop his train, which the engineer promptly tried to do, but was unable to do so in time to avoid the collision, although he took every precaution and used every effort within his power to prevent it.

Both engineer and fireman, who were sworn as witnesses, testified that as soon as the engineer got the signal from the fireman he applied the brakes and sounded the whistle of the engine. The testimony of plaintiff's witnesses was that not until after the forward engine passed the crossing, and not until after the accident occurred, was the whistle sounded, or any effort made to check the speed of the train. The case may be, and we are inclined to think is, a close one; but we also think, in view of the evidence and with the law of the case so impartially given to the jury, that the question of negligence was properly and fairly submitted to them, and that the evidence is legally sufficient to support their finding.

Defendant complains that the court permitted plaintiff to testify as to the injuries to her lungs, be-

cause no such injury was averred in the complaint. While it is true that some injuries were said to be to other parts and organs of her body, there was a general allegation that she received great personal injuries without specifying their location. This evidence was not outside the issues tendered and joined in the case. Besides, the small verdict rendered was not an excessive one for the injuries which plaintiff undoubtedly sustained as the result of the collision.

One of the plaintiff's witnesses was allowed to testify that in the position the fireman occupied at the time, he could have seen and known that the horse was running away. Defendant says this was improper, because it was not a fact to which the witness testified, but merely his conclusion and opinion. The court might well have sustained defendant's objection to the question, but under the facts of this case we are satisfied that the answer could not have prejudiced defendant. Unquestionably, the horse was running away and plaintiff had lost control. Defendant's own fireman testified that he did not think so at first, but before the half mile post was reached he became aware of it, but that there was not time after such discovery to stop the train. Taken in connection with the other testimony of plaintiff's witness who gave this objectionable answer, it is apparent that the answer was intended to convey to the minds of the jury, and they must have so understood, that the fireman was in such a position that he saw and recognized the situation as it existed; because, as the witness said, there was no obstruction whatever between the horse and the cab of the engine in which the fireman was sitting. Considering these various matters, we think the admission of this testimony was not prejudicial.

Upon cross-examination of defendant's locomotive engineer, plaintiff's counsel was permitted to

propound and have answered the following question:

"If you can stop a moving train in the length of a train, as I understand you to say you can, and you whistled down brakes and applied the air three or four telegraph poles south of the crossing, how do you account for the fact that the train did not stop until the train got three or four telegraph poles north of. the crossing?"

Defendant says that this was error because, whether or not the train was stopped within a reasonable time and distance, if defendant was under any duty to stop at all, was one of the ultimate facts to be determined by the jury upon the testimony submitted. While that is true, defendant was not hurt by the ruling. There was testimony by the engineer that the shortest distance in which such a train could be stopped was about a train length, and that he whistled down brakes before he reached the private crossing. There was evidence by another of defendant's witnesses that the train was not stopped until the caboose at the rear was several telegraph poles beyond such crossing, and by plaintiff's witness much farther, which tended to show that the train was not stopped as soon as it might have been; hence, in the light of this evidence, such a question on cross-examination, was pertinent. However this may be, the engineer's answer in reply to this question, "I think I said about a train length, more or less," could not have harmed defendant.

The plaintiff was permitted to introduce in evidence statements alleged to have been made by two members of the train crew some time after the accident, just how long the evidence leaves indefinite, and defendant says that these statements were not parts of the *res gestae,* but mere recitals or expressions of opinion upon matters of past history.

Indeed, from our examination of the record it would seem, at least as to one statement, that no such objection was made when this evidence was admitted; and, if so, it is too late for the first time upon this review for defendant to be heard upon it. But we think this evidence was admissible, because it purported to detail conversations out of court by members of the train crew, which were inconsistent with their testimony at the trial. And upon cross-examination, their attention was called to such conversations and they either denied, or were uncertain concerning, them. Therefore, plaintiff was entitled to show such inconsistent statements, not as part of the *res gestae*, but as tending to impeach defendant's witnesses.

The further objection that the alleged statement of the conductor of the train as to what they (the crew) thought about plaintiff's situation and conduct was improper in any event, because he did not see her when she was riding along the highway, and his statement could not bind the company, is not fatal to the ruling of the court in admitting evidence of it, as the statement was made in the presence and hearing of the engineer and fireman and other members of the train crew, and not denied or repudiated by them, hence it tended to affect their inconsistent testimony on the trial.

Considering that the case was tried with care, and the evidence being sufficient to uphold the finding, and the instructions being satisfactory to defendant, we are constrained to hold that its rights were fully protected, and that the jury were justified in their verdict.

The judgment is affirmed.        *Affirmed.*

Chief Justice Steele and Mr. Justice Gabbert concur.