[No. 3574.]

## DENVER CITY TRAMWAY CO. V. GAWLEY.

1. TRIAL—*Pleading and Evidence—Variance.* Plaintiff complained of an injury received while she was a passenger on defendant's tramway, which she attributed to defendant's negligence, alleging injuries to diverse parts and members of her person, "by reason whereof she was permanently injured in her back, spine, and nervous system." Held, that professional evidence that the condition of the spine at the time of the trial was the result of the injuries received upon the occasion complained of, and that the injury was permanent, was not variant from these allegations.

2. EVIDENCE—*Cross-Examination of Physician as to Medical Books.* A physician who bases an opinion upon medical works which he names may be cross-examined thereupon to show his error and contradict his testimony.

Not so when his opinion is formed independently of such books, and he testifies that he has never read the book named.

And it seems to be the general rule that medical authorities are not to be used to contradict a medical expert.

3. —— *Competency—Medical Books.* By the weight of authority medical books are not admissible in actions for personal injuries, as independent proof of the opinions expressed therein.

The rule supported by reasons additional to those set down in the authorities.

4. INSTRUCTIONS—*Falsifying the Evidence.* An instruction which declares, contrary to the fact, that there is no evidence to sustain a particular contention, is properly refused.

5. —— *Refused—But Given in Other Words.* The refusal of an instruction substantially given in other words is not error.

*Appeal from Denver District Court.* HON. HARRY C. RIDDLE, Judge.

Mr. GERALD HUGHES, Mr. HOWARD S. ROBERTSON, Mr. FREDERICK P. SMITH, for appellant.

Mr. GEORGE F. DUNKLEE, Mr. O. E. JACKSON, for appellee.

MORGAN, J.

Mrs. Gawley was injured in a collision while a passenger on one of appellant's street cars in Denver, in August, 1908, and, in an action for personal injuries, obtained a judgment in the district court against the appellant for $1,000, October 7, 1909. In this appeal from the judgment, appellant contends that the lower court erred in the admission and in the exclusion of evidence, and in the giving and in the refusal of instructions. Appellant's negligence is conceded, and the assignments of error are extremely technical.

1. Appellant argues that as the plaintiff alleged injuries to only certain parts of the body, no recovery could be had for injuries to any other part, unless it were shown that such latter injuries were due to the former. The complaint states:

"That by reason of said collision said car in which the plaintiff was a passenger was badly wrecked and damaged, and the plaintiff, without any fault or negligence on her part, and while in the exercise of due care and caution, was by the said negligence of the defendant violently thrown from her seat, and was then and there bruised, mangled and wounded by the frame work of the seat and other parts of said car, whereby her first finger on her right hand was severely cut and wounded, her left arm was wounded and bruised from the shoulder to the wrist, she received a severe blow and bruise upon the back of her head, and severe wounds and bruises on her back, left hip, outside of the right ankle and outside of the right knee, and her mouth and left eye were cut and bruised, and by reason whereof she was permanently injured in her back, spine, left hip, and her nervous system, in a way and manner which she is unable to more definitely state, and by reason of said injuries she has ever since been unable to carry on her household duties

and has suffered great pain and mental anguish. That all of said losses and injuries have resulted from the aforesaid wrongful acts on the part of the defendant.''

The appellant says that, under the foregoing allegations, it was error to permit a physician to testify, on plaintiff's behalf, that the condition of her spine and back, at the time of the trial, was the result of the injuries received in the collision, and that he believed the injuries were permanent, because such proof did not correspond with the allegations of the complaint, and that such evidence should have been confined to the specific injuries enumerated therein; and that any evidence as to the injury to the spine and back was inadmissible unless it was shown that the same were due to some one or all of the specific injuries alleged; and that no testimony as to any permanent injury to the spine and back, left hip or nervous system should have been admitted, because there was no testimony that such injuries were caused by the specific injuries set out in the complaint. The contention is that such evidence was outside of the complaint and was a ''broadening of the issues,'' and that plaintiff should have been restricted to the injuries alleged. There is no rule of law more firmly settled than that which requires the proof to correspond with and be confined and restricted to the allegations in the pleadings, but that rule was not violated in the pending case, but was substantially followed. The principal contention is that the testimony concerning the permanent injury to the spine and back and nervous system should have been excluded, because it was not shown by the testimony that the latter permanent injuries were the direct result of the specific injuries alleged to have been received on the arm, leg, back, left hip, mouth, and back of the head. The testimony, however, discloses many facts tending to prove that such permanent injuries were due to the specific injuries alleged. Plaintiff testified to all the specific in-

juries, and in her testimony stated that the bones at the back of her head were hurt, that she was badly bruised in the back, that the plate in which she had a few artificial teeth was broken by the blow on the back of her head, thereby causing her mouth to be filled with blood, that she could not sleep for two or three months on account of the pain in her head, that the physician treated her head for two or three months, that she was not able to do any work except light work until the latter part of January, 1909, that she suffered from injuries to her head, back and left side, that her hip continued to burn at times, especially on damp days, that she never slept much, lost her appetite, had no ambition to do anything, that sound almost made her cry, that she could not stand any noise or excitement of any kind and never had any nervous prostration before that time. Her daughter also testified as to her nervousness. Her physician testified to all the injuries, and in his testimony stated that the posterior part of the pelvic frame was considerably bruised, that there were contusions on the lower part of the spinal column, the lumbar and sacral parts, that she had complained of injury in that locality more or less up to the time of the trial, that when she got up out of bed in January, 1909, she was suffering from neurasthenia, and that such trouble may be caused by such injuries. He stated that there were no injuries from which she would not recover, except the injury to the spinal column, which he said might continue to give her more or less trouble, and added "the nervous system, of course." He stated that he expected no improvement in the nervous condition at all, and that the injury to the nervous system would probably continue. Another physician testified, on behalf of defendant, that the plaintiff was suffering at the time he examined her, thirteen months after the accident, with a nervous condition, a mild type of neurasthenia.

In the admission and exclusion of testimony, and also in the instructions, the court considered all the contentions of counsel for defendant, and restricted the testimony and the instructions in such a way as to substantially confine the issues to the allegations of the complaint. The testimony of the plaintiff's physician as to the condition of the back and the spine at the time of the trial was fairly within the allegations of the complaint, and his testimony as to the permanency of the injuries to the spine, back and nervous system was sufficient to show that such permanent injury was due to some one or more of the specific injuries alleged; hence there was no error committed by the court in the admission of the testimony complained of. There are a number of cases in which the courts have held that the evidence introduced constituted a material departure from the allegations of the complaint and did not correspond therewith, but we have not found any case that goes so far in such direction as counsel contend for here. In the case of *D. & R. G. R. Co. v. Buffehr,* 30 Colo., 27, relied upon by appellant, the acts of negligence alleged were that no warning was given of the approach of the train, and that its speed was greater than a certain ordinance permitted, while the testimony admitted was that the engineer did not see the injured person and did not keep a look-out in front of his engine. It is clear to the legal mind that the evidence of negligence proved did not correspond with the acts of negligence alleged, but even in that case the court held that the variance between the pleadings and the proof did not require a reversal, on account of the fact, however, that the case was tried regardless of the defect. Counsel in the pending case have raised sufficient objections at the trial, and saved their exceptions, and if there were any substantial variance between the pleadings and proof, or any material departure in the proof from the allegations in the com-

plaint, this court would be justified in reversing the case; but, as heretofore stated, there was no such variance or departure. In a later case, *Denver Tramway Co. v. Cowan,* 51 Colo., 64, 75, our supreme court had under consideration a similar question, wherein the plaintiff was permitted to testify that the sartorius muscle was sore from the effects of the injury, and a physician was permitted to testify that pleurisy developed as a result of the injuries occasioned by the acident; and it was argued that the evidence was not admissible under the pleadings and under a certain bill of particulars, as the complaint only alleged that "the neck of the right femur of the plaintiff was broken and the flesh, muscles and tissues surrounding the same were very greatly injured, lacerated and torn, and the body of this plaintiff was severely bruised, beaten and wounded," and the bill of particulars only described certain "bones broken and wrenched, muscles and tissues lacerated and torn," but did not designate the sartorius muscle, and did not mention nor include pleurisy; but the court held that a general allegation of injury, or sickness as an element of injury, resulting from an accident was sufficient to let in proof of the character under consideration. And in the case of *D. & R. G. R. Co. v. Mitchell,* 42 Colo., 43, 48, our supreme court had under consideration an instance wherein the court permitted the plaintiff to testify as to injuries to her lungs, while no such injury was averred in the complaint, and used the following language:

"While it is true that some injuries were said to be to other parts and organs of her body, there was a general allegation that she received great personal injuries, without specifying their location. This evidence was not outside the issues tendered and joined in the case. Besides, the small verdict rendered was not an excessive one for the injuries which the plaintiff undoubtedly sustained as the result of the collision."

2.    Plaintiff's physician was asked on cross-examination if he agreed with the statements made by a certain author in his work entitled "Bailey on Diseases of the Nervous System Resulting from Accident and Injury," on page 433, and the court sustained the objection made to this question. This was not error, because the witness had already stated that he had not read the work, was not familiar with it, and hence could not have based any of his testimony upon it, and therefore it could not be used to contradict him. The general rule only goes to the extent that a physician who bases his opinion upon certain medical works may be cross-examined thereupon for the purpose of showing his error and in contradicting his testimony.—2 Enc. of Ev., 588-593, citing *State v. Wood,* 53 N. H., 484; *Forest City Ins. Co. v. Morgan,* 22 Ill. App., 198, and other authorities. Furthermore, the witness testified in his examination to opinions of his own that are in accord with those found on said page 433, and his testimony indicates very conclusively that he agreed with the statements made by the author; hence the exclusion of the testimony was in no way prejudicial to the defendant. An extreme rule in such case is sometimes stated, that where a witness bases his opinion on medical writings generally, any reputable work may be read, and he may be asked if he agrees with the statements contained therein, and he may be cross-examined thereupon to contradict his testimony. This is contrary to the general rule, but is upheld by very good authority. —2 Enc. of Ev., 592, citing *Hess v. Lowrey,* 122 Ind., 225 (17 Am. St., 355, 7 L. R. A., 90), and other authorities. The general rule that medical authorities may not be used to contradict an expert generally, is upheld by a long list of authorities cited in 2 Enc. of Ev., 592, among which is the case of *Marshal v. Brown,* 50 Mich., 148 (15 N. W., 55); also *Davis v. State,* 38 Md., 15, and *Knoll v. State,*

55 Wis., 249 (12 N. W., 369, 42 Am. Rep., 304), and other cases.

The physician in the pending case, however, did not base any of his opinions upon medical works, but seems to have confined his testimony to his experience, and for this reason, in particular, it was not proper to cross-examine him by asking him if he agreed with the writings of any medical author, unless he had first testified that he had read such author and regarded his works as of sufficient merit upon which to base his opinion.

3. A physician on behalf of the defendant, after stating that the medical work aforesaid was written by a recognized and well-known authority, was asked to read certain pages therefrom and state what the author was dwelling upon and discussing there. This was refused, and the defendant then offered three pages of the book in evidence, with the request that the same be read to the jury. This was refused, and error was assigned thereupon. The ruling of the court complained of was not erroneous, first, because both the physicians for and against appellant testified to all of the information contained in the pages offered that was material to the issues. These pages were read into the record and have been carefully examined, and all that is contained therein of any material benefit to appellant is the opinion of the author that litigation is one of the worst things to which a patient with traumatic neurasthenia can be exposed. Both the physicians testified to the same thing. Second, it is doubtful if many of the statements of the author are directly applicable to the case and within the issues, as it does not appear that the author confined himself wholly to traumatic neurasthenia, but took up hysteria, distinguishing it from neurasthenia, and stating that litigation had a worse influence on the former nervous condition, and also based his opinions upon circum-

stances not altogether within the testimony in the pending case. Third, medical works, by the great weight of authority, are not admissible, in such instances as this, as independent proof of the opinions therein expressed. This has not been passed upon in this state, but the authorities against the admission of medical books, in such instances, are numerous, and while the reasons given are not altogether satisfactory, nor wholly unanswerable and conclusive, yet they have survived the lapse of time, and neither the encroachments thereupon nor the criticisms thereof have lessened their value. In 2 Enc. of Ev. many authorities are cited against the admission of such evidence, including *People v. Wheeler,* 60 Calif., 581 (44 Am. Rep., 70) ; *U. P. Ry. Co. v. Yates,* 79 Fed., 584; *Ashworth v. Kittridge,* 12 Cush. (66 Mass.), 193 (59 Am. Dec., 178) ; *Bixby v. Omaha & C. B. R. & B. Co.,* 105 Ia., 293 (75 N. W., 182, 67 Am. St., 299, 43 L. R. A., 533) ; *People v. Hall,* 48 Mich., 482 (12 N. W., 665, 42 Am. Rep., 477).

In the case of *U. P. R. Co. v. Yates, supra,* Thayer, circuit judge, delivered the opinion, and cites a considerable number of authorities in support of his view upholding the general doctrine that medical books are not admissible in evidence in cases of this kind. He says:

"One objection to such testimony is that it is not delivered under oath; a second objection is that the opposite party is thereby deprived of the benefit of a cross-examination; and a third, and perhaps more important, reason for rejecting such testimony, is that the science of medicine is not an exact science."

And a fourth reason might be added, that without the introduction of the entire work, the exact views of the author and his reasons for the same, cannot be definitely ascertained from mere extracts, and if one book be admitted, or any extracts therefrom, another should be admitted on the other side, and there would be no

end to the record that would follow in such cases. Furthermore, considering the technical terms that are frequently used by medical authors, which often conceal rather than disclose the meaning, the ordinary juror would not be very much enlightened by the introduction of such testimony.—*People v. Hall, supra.* Even in states where there is a statute providing that historical works and books of science or art are presumptive evidence of facts of general notoriety or interest, the courts have refused the admission of medical books.—*Bixby v. Omaha, etc., Co., supra; U. P. Ry. Co. v. Yates, supra.* In the case of *Gallagher v. Market Street Ry. Co.,* 67 Calif., 13, 15, the court had under consideration a statute of this character, which states: "Historical works, books of science or established and published maps or charts when made by persons indifferent between the parties, are *prima facie* evidence of facts of general notoriety and interest," and the court held that "facts of general notoriety and interest" limited the intended extension of the rule of evidence, so that medical works were not included within the terms of the statute. In the Bixby case, *supra,* the same kind of a statute was under consideration, and while there is no such statute in this state, the opinions of the courts in states that have such statutes, excluding medical books, are particularly in point, because they show a disposition of the courts to exclude medical books, even where it was the intention of the legislature to extend the rule of evidence in such cases beyond that which existed at common law. In the Bixby case, extracts from several works on medical subjects were offered in evidence, and refused, and the court said:

"While they might aid the educated physician to a better understanding of the matters discussed, we are satisfied their tendency was to mislead and confuse the jury. A person of ordinary comprehension could not un-

derstand much of the language used, and would be in great danger of being misled.''

The opinion quotes Chief Justice Shaw in *Ashworth v. Kittridge, supra:*

''Medical science has its own nomenclature, its technical terms and words of art, and also common words used in a peculiar manner, distinct from their received meaning in the general use of the language. From these and other causes, a person not versed in medical literature, though having a good knowledge of the English language, would be in danger, without an interpreter, of misapprehending the true meaning of the author; whereas, a medical witness would not only give the fact of his opinion and the grounds on which it is offered, with the sanction of his oath, but would also state and explain it in language intelligible to men of common experience.''

Several other cases are taken up in the opinion and discussed, among which are *Bowman v. Woods,* 1 G. Greene (Ia.), 441; *Stoudenmeier v. Williamson,* 29 Ala., 558. The last two authorities are among those which hold that medical books may be introduced in evidence in certain cases; and it may be said that outside of the states of Iowa and Alabama, there seem to be no well-considered cases upholding the admission of medical books in cases like this. The cases in Alabama seem to be direct and positive, but the Iowa cases admitting such testimony are distinguishable from those cases adopting the general rule. The case of *Birmingham Ry. L. & P. Co. v. Moore,* 148 Ala., 115, is another strong Alabama case, holding that parts of standard medical books relating to the disease in controversy are competent evidence.

Appellant lays great stress upon an article by Prof. Wigmore in 26 Am. Law Review, page 326. If, as appellant's quotation from Prof. Wigmore indicates, ''scientists have none of the temptations in their writings to

prevaricate and to conceal which surround the expert testifying for a particular purpose," the answer may be that if their writings be universally admitted, as the testimony of an expert now is, and it be true that experts do "prevaricate for a particular purpose," then, as a scientist is nothing more than an expert, he may be, once his writings are universally held to be admissible in evidence, surrounded with just as many and as great temptations, as Prof. Wigmore intimates that experts are now, to prevaricate and conceal. Scientific writers would become quite numerous, and their writings could be made to fit either side in certain litigation, and if surrounded with sufficient temptation, as intimated, they might become as plentiful as experts, and of equal variety, and, not being surrounded with the possibility of prosecution, and being ambitious for notoriety, they might greatly excel the modest expert of today in their capacity to "prevaricate" and in their ability to "conceal."

4. The court refused to give an instruction to the jury, requested by defendant, that they should not award any damages for permanent injuries to the back, spine, or left hip, because there was no evidence that tended to show that such injuries were brought about by any of the specific injuries alleged. There was no error in this, because there was evidence that tended to show that the former injuries were caused by the latter. A blow on the back of the head sufficient to break the bridge and knock the plaintiff's false teeth out and severe wounds and bruises on the back and left hip surely might result in permanent injury to the back, spine and left hip, and plaintiff and her physician testified that such was the result.

The court refused another instruction, taking from the jury any consideration of damages for or on account of any nervous disorder, either induced by reason of dwelling upon her claim against the defendant and upon

the probable result· of her suit, or brought about by any causes other than injuries sustained, but the court substantially withdrew any consideration of these things by its instruction No. 11, wherein the court instructed the jury that:

"In determining the damages, if any, that the plaintiff is entitled to recover in this case, you are not permitted to allow any compensation for the plaintiff's nervous condition brought about or endured by reason of the contemplation of this litigation, or by reason of any other matters other than those connected with or brought about by the physical injuries sustained."

It is contended that it was error for the court to instruct the jury that they "should take into consideration all the facts and circumstances in evidence before them," because such instruction would permit them to assess exemplary and punitive damages. This is hardly worthy of conjecture. Furthermore, there is nothing to indicate that the jury did any such thing, as the verdict is too small to indicate or even to intimate it.

The judgment is affirmed.

*Affirmed.*

Decided December 16, A. D. 1912. Rehearing denied January 13, A. D. 1913.