No. 18,966.

WILLIAM HAROLD WALL *v.* ELDA DOROTHY WEAVER.

(358 P. [2d] 1009)

Decided January 30, 1961.   Rehearing denied February 14, 1961.

Messrs. HOLMES & KING, Mr. STANLEY F. JOHNSON, Mr. RICHARD W. BRYANS, for plaintiff in error.

Messrs. SHELDON AND NORDMARK, Mr. RICHARD C. McLEAN, for defendant in error.

*In Department.*

Opinion by Mr. Justice Day.

Plaintiff in error, defendant in the trial court, seeks review of a judgment entered against him after jury verdict in the amount of $15,850.

The only question for determination is whether the cross examination of a medical expert called by the defendant was so improper and prejudicial as to constitute reversible error. It is our conclusion that it was.

Although both the issues of liability and damages were submitted to the jury, there was no serious doubt that the accident was caused by the sole negligence of the defendant, and his liability was established virtually without contradiction. The case was tried, almost in its entirety, upon the issue of damages. Therefore, the evidence of the medical experts was of major and critical importance.

Plaintiff, in presenting her case, called two expert medical witnesses. One was her physician, who not only examined her but also treated her for the conditions about which she complained. Plaintiff's expenses were very nominal, so her claim was predicated largely upon pain and suffering and disability. Neither of the two medical witnesses for plaintiff expressed any opinion as to the percentage of disability sustained by the plaintiff. Both testified that her condition had improved since the accident and was likely to get better. Plaintiff's experts both testified that plaintiff's primary complaints resulted from a "typical whip-lash injury" to the neck which the doctors described as constituting a tearing of the ligaments in front of the spine "usually with associated damage to the cushion and hemorrhaging around where the ligaments are torn, and resulting pressure and irritation on the nerve roots." The medical experts also described a lower back injury which one of them stated was "injury to the so-called disk protrusion." But from

all of the testimony her treatment was primarily to relieve the pain resulting from injury to the neck. Such treatment included the use of a head halter, weights and traction at home, and occasional wearing of a rubber and leather collar. One doctor said that in the months immediately preceding the trial, plaintiff had used a collar which she had made out of a bath towel and that apparently she had discontinued the use of the halter and leather collar. On the question of permanent disability, plaintiff's doctor stated, "I don't think it's large. I think it has to be calculated on the basis of pain and [sic] periods of maybe a few weeks, in which she can't do very much and will have to resort back to the traction and wearing of the collar."

As a major element of his defense, defendant sought to establish that plaintiff had exaggerated her symptoms, and that although injured, her condition did not constitute extensive or serious permanent disability. To this end a medical expert was called by the defendant to give his opinion from his examination of the plaintiff. On cross examination plaintiff's counsel persisted in asking a series of questions, all objected to, calculated to get before the jury the contents of an article in The American Journal of Medicine which was pure hearsay, not admissible, and not offered as evidence.

This article had not been relied upon by the medical expert and was repudiated by him because "a great deal of it has been called sheer nonsense." This should have ended the examination on the subject.

Notwithstanding the doctor's answers concerning the article, counsel persisted in framing leading questions which included such statements as: (a) That the article "consisted in its entirety, of rating of disabilities and rating of injuries"; (b) That a "slipped disk in the low back, naturally held, with no visible symptoms of difficulty — in other words, no complaints at all, still rates a 5 per cent total disability as a total working unit"; (c): "It's a matter of fact that that rating board was 20

or 30 of your finest rating physicians in the United States"; (d) That it is "a fact that that's a basis if there are any symptoms — discoverable symptoms, that that 5 per cent base goes on up to 10 or 20, or whatever it may be."

All of the foregoing was placed before the jury over repeated objections by counsel for the defendant. Equivocal rulings made by the court permitted such questions until finally the court sustained a proper objection with the comment, "I think that's a little far afield, whether or not this article is proper." Even after this ruling, counsel asked a final question, preceding it with the comment: "I think for the record I should ask the question however, if Your Honor please, and *I presume it will be objected to and also the same ruling.*" The question then propounded was: "Q. That same article to which we've been referring Doctor, also states that a slipped disk being in the cervical spine, naturally held, with no discoverable symptoms, still has a base of 5 per cent." As predicted, the objection was made and sustained.

■ It should be noted here that no one of the medical experts ever testified that plaintiff had a "slipped disk" in the cervical spine. Therefore, the final question was prejudicial both on the ground that it actually placed before the jury the hearsay contents of the article and also assumed a fact which had never been established in any portion of the testimony.

The principle involved is expressed in *Maland v. Tesdall,* 232 Ia. 959, 5 N.W. (2d) 327:

" * * * A prejudicial course of examination was pursued. Incompetent questions which assumed the existence of damaging facts were frequently asked. The questions and not the answers seem to have been considered important. * * * "

A similar situation occurred in *Allen v. Boston Elevated Railway Company,* 212 Mass. 191, 98 N.E. 618. In that case the jury was instructed to disregard the con-

tents of the article, but in reversing the judgment the court said:

"* * * We should hesitate to say that even a broad instruction to the jury to disregard wholly the evidence thus obtained would have cured the injury which had been caused to the defendant.

\* \* \*

"The effect of this error may have been more than merely to affect the amount of the plaintiff's damages. Her right to recover at all depended upon the proof that she really had suffered injury. * * * The error may have prejudiced the defendant upon this question. * * * "

One of the leading cases on the subject is *De Haan v. Winter,* 262 Mich. 192, 247 N.W. 151, cited in 2 Enc. of Ev. 588-593, wherein we find this language:

"* * * Although objections were sustained, the effect of the cross-examination is an impression that the opinion of the witness is not in accord with eminent medical opinion or authority, and the jury, we think, must have been so impressed. Indeed that was the aim of the cross-examination. This is reversible error."

The action of the trial court in finally sustaining the objection was proper. Colorado decisions do not permit use of medical writings not relied upon by the expert during cross examination. The rule was clearly stated in *Denver City Tramway Co. v. Gawley,* 23 Colo. App. 332, 129 Pac. 258, as follows:

"* * * The general rule only goes to the extent that a physician who *bases his opinion upon certain medical works* may be cross-examined thereupon for the purpose of showing his error and in contradicting his testimony." (Italics supplied.)

The court, in the last cited case, further declared that it is not proper cross examination to refer to a medical authority when the witness had based his opinion upon his experience and that such cross examination is particularly improper when the witness has not recognized and accepted the authority in question.

The judgment is reversed and the cause remanded for new trial on the question of damages only.

MR. JUSTICE MOORE and MR. JUSTICE FRANTZ concur.