## No. 10,686.

### LOWE *v.* THE PEOPLE.

Decided March 2, 1925.

Plaintiff in error was convicted of murder.

## *Affirmed.*

1. JURY—*Open Venire.* While all petit jurors should be drawn from the box ordinarily, the statutory method is not exclusive, and unless prohibited, the court has the inherent common law power to select a jury upon an open venire.

2. CRIMINAL LAW—*Jury—Time to Investigate.* Overruling an objection to a panel of jurors summoned on an open venire, on the ground of insufficient time to inquire into the qualifications, character and relations of the members, not error, where no prejudice resulted to the complaining party.

3. APPEAL AND ERROR—*Criminal Law—Conflicting Evidence.* The reviewing tribunal is not required to reconcile conflicting evidence to sustain a verdict of conviction.

4. *Conflicting Evidence.* On review, the verdict of a jury on conflicting evidence will not be disturbed, as unsupported thereby, particularly when it has received the approval of the trial judge.

5. CRIMINAL LAW—*Setting Aside Verdict—New Trial.* It is the duty of the trial judge to set aside a verdict of conviction which he is convinced is unsupported by the evidence, and it is not necessary that he await a motion before taking action.

6. *Evidence—Ex Parte Investigations.* It is proper to receive testimony of experts who have made ex parte investigations in criminal cases, it being the province of the jury to determine the weight to be given such evidence. Such testimony should not be accompanied by cautionary instructions, in ordinary cases.

7. *Homicide—Proof—Elements—Corpus Delicti.* Proof that one charged committed felonious homicide involves three elements: Death, criminal agency of another as the cause, and identity of the accused as that other. The first two constitute the corpus delicti.

8.      *Homicide—Proof.* Each of the elements of felonious homicide must be established beyond a reasonable doubt.

9.      *Weight of Evidence.* The court is not the judge of the weight of the evidence.

10.     *Homicide—Sufficiency of Proof.* The requirements of the law on proof of the elements of felonious homicide are met, when sufficient evidence has been produced to justify a submission to the jury and to support a verdict of guilty should such a verdict be returned thereon.

11.     *Corpus Delicti—Proof.* Proof of corpus delicti may be made by any legal evidence, the same as proof of other facts. .

12.     *Trial—Corpus Delicti—Order of Proof.* While proof of the corpus delicti should, if possible, precede proof of defendant's connection with the crime, order of proof rests in the sound discretion of the trial court, which, in the absence of abuse and prejudice, will not be interfered with.

13.     *Homicide—Motive—Evidence.* Evidence of sexual relations of defendant with his wife to rebut alleged motive of lust and passion in a homicide case was irrelevant and immaterial, and properly excluded.

14. INSTRUCTIONS—*Consideration.* Instructions must be considered as a whole, and no single instruction may be condemned piecemeal.

15.     *Requests.* Requested instructions which are covered by those given by the court, are properly refused.

16.     *General and Specific.* Instructions to juries should include the rules of law necessary for their guidance and essential to the comprehension of questions submitted for determination, but beyond that point elucidation ends and confusion begins. The trial court has no duty to select all salient points in the evidence and specifically call them to the attention of the jurors.

*Error to the District Court of Weld County, Hon. George H. Bradfield, Judge.*

Mr. ROBERT E. WINBOURN, Mr. KARL W. FARR, for plaintiff in error.

Mr. RUSSELL W. FLEMING, Attorney General, Mr. WAYNE C. WILLIAMS, Attorney General, Mr. CHARLES M. WHITE, Assistant, Mr. CHARLES ROACH, Deputy, Mr. WILLIAM L.

BOATRIGHT, Attorney General, Mr. JEAN S. BREITENSTEIN, Assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

ON a verdict of guilty of murder in the first degree plaintiff in error (hereinafter referred to as defendant) was sentenced to life imprisonment. To review that judgment he prosecutes this writ. His application for supersedeas was heretofore denied and he is now in the penitentiary.

On Sunday, July 2, 1922, at some time between 9:30 and 10 o'clock a. m., defendant and his sister-in-law, Edna Fern Skinner, twenty-two years old, were alone in defendant's residence in Greeley, Colorado. A little before the last mentioned hour he went to a neighbors and reported a fire at his home and requested that the fire department be called. On the arrival of the firemen the kitchen was in flames and the lifeless and badly burned body of Miss Skinner was found on the floor. The theory of the prosecution was that defendant had killed deceased with a hammer, poured gasoline over her body and about the room, and lighted the fire. Defendant maintains that Miss Skinner's death was caused by an accidental explosion of a gasoline stove.

The assignments worthy of notice may be thus grouped: (1) That the jury was irregularly drawn and illegal; (2) that the evidence was insufficient to support the verdict; (3) that evidence of an autopsy was improperly admitted; (4) that the corpus delicti was not established, and that the rule governing order of proof thereof was violated to defendant's prejudice; (5) that certain of defendant's evidence, offered to contradict people's proof of motive, was improperly excluded; (6) that two instructions given should have been refused and three refused should have been given.

1. On the day this cause was set for trial defendant objected to the entire panel of jurors because irregularly

drawn. The objection was sustained, the jurors discharged, and an open venire ordered issued to the sheriff. Thereupon defendant filed an affidavit of prejudice against the sheriff, and the people a like affidavit against the coroner and his deputy. Whereupon, over defendant's objection, an open venire for jurors was issued to two elisors appointed by the court. Defendant then moved for a continuance "until such time as a regular panel of jurors may be drawn from a proper and complete and legal jury list," and the motion was denied. Said jurors were returned as directed, whereupon defendant objected to the entire panel because neither he nor his counsel "have had sufficient, or any time to inquire concerning the qualifications, character and relations of said members of this open venire," and that objection was overruled.

All petit jurors for service in Weld county should be drawn from the box: "Provided, however, That in cases of need, persons whose names are not in said box, as well as persons whose names are contained therein, may be summoned upon an open venire according to law." Sec. 5871, C. L. 1921.

"Nothing in this act contained shall be held to deprive any court of the power to cause a jury to be summoned by open venire as is provided by law." Sec. 5874, C. L. 1921.

"Where the jurors have not been drawn and summoned according to statute, it is within the power of the court to order the issuance of a special venire. The same rule applies in the case of petit jurors that obtains in the case of grand jurors." *Imboden v. People,* 40 Colo. 142, 168, 90 Pac. 608, 617.

"The statutory method of summoning jurors is not exclusive, and unless prohibited, the court has the inherent common-law power to select a jury upon an open venire, directed to the sheriff." *Mitsunaga v. People,* 54 Colo. 102, 107, 129 Pac. 241, 243.

Defendant now says that an open venire could only issue to complete a panel, not to furnish a panel. In other words

it would require one remaining juror from the regular panel drawn from the box to validate this open venire for sixty additional jurors. The contention is contrary to the authorities above cited and unsupported by reason.

Defendant next contends that his objection made at the opening of the trial should have been sustained for the reason therein given. No prejudice is suggested and in the absence of such this court has held otherwise. *Imboden v. People, supra.*

2. In view of the importance of this cause and the earnest contention that the verdict is unsupported, we have not been content with the abstract, but have read carefully the entire bill of exceptions, consisting of more than 4400 folios.

At the time of the tragedy defendant resided with his wife, his three daughters and his wife's sister, the deceased. He had that morning taken the wife and daughters to Sunday School. Deceased remained at home, evidently preparing to attend church. Defendant returned in his car and entered the dwelling about 9:45 a. m., and a few minutes before 10 called the fire department. He himself had some traces of contact with flames due, he says, to his efforts to rescue the girl. Her body was promptly taken to the undertaking parlors and prepared for interment. It was examined there by several persons, including the undertaker and one physician, and on July 4, accompanied by defendant and a young man who had been engaged to marry Miss Skinner, was taken to her former home in Illinois and buried. While the body was at the undertakers in Greeley a dislocation of the nose and several superficial cuts on the head were found. There was also apparent, over most of the body, evidences of burning. The conduct of defendant on the trip to Illinois excited suspicion, as a result of which deceased's mother and brother came to Greeley to investigate. A warrant was sworn out for defendant and he was arrested August 22, 1922. On the following day the district attorney and a deputy sheriff left for Illinois where the body was exhumed

and an autopsy held, August 27, in their presence and the presence of several other persons, including two brothers of defendant and a physician called in by them. The Autopsy was conducted by Dr. Hart of Bloomington, Illinois, a physician of wide experience, who testified at the trial. This autopsy disclosed a hitherto undiscovered fracture of the skull which Dr. Hart testified could have been made with the smaller end of a ball pien hammer found in the house three days after the tragedy and which it appeared had long been on the premises. July 1, defendant had purchased a gallon of gasoline, the disappearance of which is not satisfactorily accounted for. Deceased carried two life insurance policies, one for $500 and the other for $2,500, in each of which defendant was the beneficiary, and each of which had been taken out on his solicitation or application and paid for by him. The first was collected by him immediately and in the afternoon of the day of the tragedy he wrote the company which issued the other to send him the necessary claim blanks. He had paid the premium on this last mentioned policy on June 28, and thus saved it from lapsing, but neglected to pay a premium on his own policy due at the same time, and permitted to lapse by reason of that neglect. Applicant's claim for the $2,500, made after his return from Illinois and prior to the autopsy there held, consists of the official certificate of death; the affidavit of the physician who examined the body at the undertaking parlors in Greeley; the affidavit of the Greeley undertaker; and the affidavit of defendant. The official certificate gives the cause of death as "accidental burning (explosion of gasoline stove) (immediate death) ;" the affidavit of the physician gives "explosion of gasoline stove," and the nature and extent of the injury "burned to death"; the affidavit of the undertaker gives "burned to death in gasoline stove explosion"; whereas defendant's affidavit, in answer to the question, "How did the accident occur," states, "Explosion of gasoline stove driving a part of the stove into head of deceased," and in response to the question, "What injury or injuries

were actually received and what was the extent of the same," states "Stove explosion a part of the stove was driven into head killing assured instantly." At the time this affidavit was made no one, unless the defendant himself, knew that deceased had sustained a fracture of the skull. That fact was not disclosed until the Illinois autopsy was held. Defendant says when he first returned to the house deceased was in the bathroom; that he sat down in the living room and began the perusal of a newspaper; that he heard deceased scream once or twice, and cry out, "Oh! help!" or, "Oh! Bert!" whereupon he says he started for the kitchen whence the cry came but found the room in flames, was unable to enter or effect a rescue by reason thereof, was burned in the attempt, abandoned his efforts, and put in the fire call. There were two doors through which defendant might have entered the kitchen. One opening from a bedroom near the bathroom door, the other opening from the dining room. Defendant says he attempted to enter through the latter, though he had every reason to believe deceased had entered from the bathroom, near the other door. When forced by the flames to retire he made no attempt to enter the other door, said nothing about deceased when he put in the fire call, and did not mention her until he returned to the house after her body had been discovered by neighbors who had appeared on the scene. The girl was found within approximately four feet of the bedroom door through which defendant could have rescued her by reaching, or at least by taking a single step. His approach from the place where he says he entered was cut off by a kitchen range standing on that side of the room and between the door through which he entered and the body. There is ample, definite, and apparently credible evidence, that death was instantaneous and due solely to the fracture; that the other wounds and the burns were effected after life was extinct; that the burning occurred while the body lay prostrate; that the fracture could not have been caused by any part of the gasoline stove, by falling on the floor, or against the range, or by any-

thing found in the room save the hammer above mentioned. Several neighbors heard the screams and one testified to hearing the words, "Oh! don't!" but none heard an explosion. There is also evidence that this particular stove could not and did not explode and that no possible explosion of a gasoline stove could explain the peculiar conditions found in the kitchen on the arrival of neighbors and the fire department. True there is evidence to the contrary on each of these points. It would be impossible for a reviewing tribunal to reconcile this conflicting testimony and we are not required to do so. Here, if ever, the rule is applicable that we will not disturb, as unsupported, the verdict of a jury based upon conflicting evidence, particularly when by overruling the motion for a new trial the evidence supporting that verdict has received the approval of the trial Judge who had the same opportunity as the jurors to see and hear the witnesses and whose duty it was, by that ruling, to either approve or disapprove the finding. *Piel v. People*, 52 Colo. 1, 7, 119 Pac. 687; *Morletti v. People*, 72 Colo. 7, 11, 209 Pac. 796.

So important is this function of the trial judge that he must not only set aside a verdict which he is convinced is unsupported by the evidence, but in doing so he is not required to await a motion to that effect, and if none is filed he may "at the very latest moment" sua sponte award a new trial. *U. S. v. Harding*, 1 Wall. Jr. 127, 139, 26 Fed. Cas. 131, No. 15301. We must therefore say that this verdict is amply supported.

3. The disclosures of the Illinois autopsy were evidenced by the testimony of the doctor who performed it and that of other witnesses there present; by photographs taken during its progress, and by that portion of the skull of deceased showing the fracture. All this, counsel for defendant insists, should have been excluded because defendant was given no notice that such a proceeding was contemplated and had no legal representative in attendance. Authorities are cited which advise such representation, which say that distinguished writers on medical jurisprudence

hold that evidence of such autopsies will be excluded if "taken flagrantly ex parte"; that all the circumstances surrounding such a transaction should be inquired into, and that under certain circumstances such evidence should be accompanied with cautionary instructions. None of these authorities support this assignment, and that which cites the opinion of writers on medical jurisprudence disagrees with their conclusion, and adds: "Not only has the practice been to receive the testimony of experts who have made ex parte investigations, but, in our opinion, it is entirely proper that the testimony should be allowed to go to the jury, whose duty it is to determine the weight to be accorded to it." Rogers on Expert Testimony (2nd Ed.) § 14 p. 35.

This we believe is the correct rule. Once the contrary is established no logical halting place can be discerned short of declaring that at all important steps in the people's investigation and preparation for trial the defendant shall be represented. We reject the suggestion that, if admitted, such evidence should be accompanied by cautionary instructions as being, in ordinary cases and in this case, an improper invasion of the province of the jury.

4. Counsel for defendant contend that the corpus delicti was not proved. They further insist that, if it was, the rule governing order of proof in such cases was violated to defendant's prejudice. That rule, they say, requires the proof of the corpus delicti beyond a reasonable doubt before any evidence tending to connect defendant with the crime is admissible. In the instant case but little evidence of criminal agency preceded the evidence of motive.

Proof that one charged committed a felonious homicide involves three elements; first, the death; second, the criminal agency of another as the cause; third, the identity of the accused as that other. The first two constitute what is known in law as the corpus delicti. Some authorities erroneously include the third but this makes the corpus delicti identical with the whole case of the people. *State v. Dickson,* 78 Mo. 438; *Lovelady v. State,* 14 Tex. App. 545,

Each of these elements must be established by the prosecution to the satisfaction of the jury beyond a reasonable doubt. The court, however, is not the judge of the weight of the evidence. When sufficient has been produced to justify a submission to the jury and support a verdict of guilty, should such a verdict be returned thereon, the requirements of the law have been met. This rule applies to each of the elements of the corpus delicti as it does to the proof of the identity of the accused as the perpetrator; no more no less.

The rule as to proof of the corpus delicti is founded upon centuries of judicial experience. The reasons therefor have been set forth in Wharton's Criminal Evidence (10th Ed.) Vol. 1, pp. 636, 637 and 638, and in many other recognized authorities, and need not be here repeated. That proof may be made by any legal evidence, the same as proof of other facts. Id. 640, 647. If, as hereinbefore held, the evidence was sufficient to support the verdict, it necessarily follows that the evidence of each essential element was sufficient, and the first part of this objection is disposed of.

Proof of the corpus delicti should, if possible, precede proof of defendant's connection with the crime, and some authorities go far toward holding the rule inflexible in homicide cases. *People v. Hall,* 48 Mich. 482, 485, 42 Am. Rep. 477, 12 N. W. 665; *People v. Millard,* 53 Mich. 63, 67, 18 N. W. 562. This order, however, cannot always be followed, and it often happens that the very nature of the evidence so commingles the two as to make separation impossible. It has been said that error committed in the admission of evidence of defendant's connection with the alleged crime prior to proof of the corpus delicti is cured by the subsequent proof thereof. *Carl v. State,* 125 Ala. 89, 28 So. 505; *Holland v. State,* 39 Fla. 178, 22 So. 298. But, inasmuch as the failure of subsequent proof of the corpus delicti would necessitate a reversal for want of evidence, this is equivalent to saying that such irregular order of proof is no error, and it has been so held. *State v. Alcorn,* 7 Idaho 599, 64 Pac. 1014, 97 Am. St. Rep. 252.

It may be that prejudice due to irregular order of proof is more probable in criminal cases than in civil, in trials for homicide than for minor offenses, and as relating to the corpus delicti in such cases than as relating to minor facts. All this, however, does not militate against the general rule that order of proof rests in the sound discretion of the trial court, which, in the absence of abuse and prejudice, will not be interfered with. We discover no good reason why proof of the corpus delicti in homicide cases should constitute an exception. We think it does not and we discover in this record no evidence of abuse and prejudice.

5. Defendant's wife testified for him, and stated on cross-examination that at certain times when defendant was accustomed to bring deceased home in the evening they would be alone together. This was followed by some wholly immaterial evidence that the witness had heard that deceased was unwell at the time of her death. Counsel for defendant neither objected to this nor moved to strike it. A witness for the people then testified that on certain occasions defendant's attitude toward deceased "was that of a man who wished to be alone with a woman," and that deceased tried to avoid being alone with him. This, says defendant, was an attempt to inject into the trial an alleged motive of lust and passion. To rebut that supposed motive defendant's wife was asked a question concerning her sexual relations with her husband, to which question an objection was sustained. We think this alleged evidence of motive was too far fetched and trivial to deserve serious consideration; but, in any event, the evidence by which it was attempted to rebut it was entirely irrelevant and immaterial and was properly excluded.

6. Instruction No. 7 contains this clause, which defendant says is an assumption on the part of the court that he inflicted the wounds which caused death: "and if there is no legal excuse, just cause or provocation for the defendant so inflicting the wounds which caused the death of the which caused the death of Edna Skinner," it thus appears

the instructions must be considered and interpreted as a whole, certainly no single instruction may be condemned piecemeal. That portion of instruction No. 7 immediately preceding the clause complained of, and separated from it only by a comma, is: "If you find from the evidence beyond a reasonable doubt that the defendant did inflict the wounds which caused the death of Edna Skinner," it thus appears there was no such assumption and the objection is wholly without merit.

Instruction No. 8 directs the jurors to convict defendant if they believe from the evidence beyond a reasonable doubt that he murdered deceased. It is objected to because it does not direct them to acquit if they do not so believe. That alternative is fully covered by instruction No. 9, hence the rule above cited disposes of this objection.

Defendant's tendered instruction No. 1 specifically points out the defense of accidental death and requires that the evidence (in this case circumstantial) exclude every reasonable hypothesis save the criminal agency of defendant. All this is covered by instruction 4 and 12 given by the court.

Defendant's tendered instruction No. 2 directs the jurors to consider the evidence of the autopsy "with extreme precaution" or reject it "in its entirety" if it "did not make use of all available material or did not make the fullest examination known to the state of the science under consideration." The proposition is erroneous and the question has been disposed of under paragraph 3, supra. Moreover, all this goes to the question of the weight to be given the testimony of the people's expert, Dr. Hart, and that entire matter was properly submitted by instruction No. 15.

Defendant's tendered instruction No. 3 reads: "You are instructed that on a murder charge expressions of good will and acts of kindness on the part of the defendant toward the deceased are always important evidence as showing what was his general disposition towards the deceased and may properly be considered by the jury as evidence as

to whether or not the defendant could or could not be guilty of the offense charged."

This is a slightly twisted version of a quotation from Wharton which, as a general proposition, we approved in *Murphy v. People,* 9 Colo. 435, 448, 13 Pac. 528. However, we did not there intimate that it required a specific instruction, and we know of no authority that does so. Even Mr. Wharton's statement requires qualification, for whether such evidence is "important" may depend upon many surrounding facts and circumstances. "Expressions of good will and kindness" from one using them for the purpose of luring his intended victim to destruction would scarcely come within the rule. Whatever importance should have been attached to the evidence here referred to was perfectly obvious. The trial court has no duty to select all the salient points in the evidence, favorable and unfavorable, and specifically call them to the attention of the jurors. The rules of law necessary for their guidance and essential to their comprehension of the questions submitted for their decision should of course be given, but beyond that point elucidation ends and confusion begins. This instruction was properly refused.

Finding no reversible error in the record the judgment is affirmed.