TERRITORY OF HAWAII *v.* MANUEL S. ADIARTE.

No. 2610.

SUBMITTED DECEMBER 17, 1946.    DECIDED FEBRUARY 20, 1947.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY LE BARON, J.

Under a plea of not guilty, the defendant was tried upon the charge in the indictment of murder in the first degree for the killing of his wife. Two attorneys, appointed by the court, represented and defended him. After

trial, the jury returned a verdict of guilty as charged and the court sentenced the defendant to be hanged.

An appeal by writ of error has been perfected. It specifies two assignments of error. One states that "The verdict of the Jury is contrary to the law, contrary to the evidence and contrary to the weight of the evidence in that the element of premeditation was not established beyond a reasonable doubt."

There is no conflict in the evidence that the defendant killed his wife and no appreciable conflict therein relative to the circumstances of the killing. The evidence is more than sufficient as a matter of law to have justified a finding by the jury of facts in sequence as follows: That the defendant was extremely jealous of his wife; that he believed she was interested in other men and by reason thereof neglected their five minor children; that as a consequence he frequently quarreled with her and approximately three weeks before the killing threatened to kill her, the children and himself; that as a result of such threat she and the children separated from him; that on the morning of the killing he left his abode and went to the house of his wife and children with the intention as expressed in his own words of "either getting the difficulties between he and his wife [settled] on a basis that suited him or killing her and the children"; that on arriving he found that his wife had left the three youngest children alone without preparing any food for them whereupon, because they were hungry, he prepared a meal and fed them; that he then left the house and purchased a knife with homicidal intent as evidenced by his own testimony, relative to the reason of purchase, in the following words: "* * * since I find my children suffering with hunger like that I say to myself, 'I think it is better for us to be in one grave' "; that he returned with the knife and in contemplation of the

killing wrote two notes in one of which stating, "I prefer to be all in one grave than to see our children suffer like this that is why I kill them all I asked the government to put our body in one grave and in one coffin" and in the other, "I thought we all better die and be in one grave rather than to be separate"; that about an hour later his wife returned with a man known as Carlos who was carrying packages which she had purchased; that the defendant greeted them calmly and conversed with said Carlos in what appeared to be a friendly and normal manner; that immediately upon the departure of Carlos, the defendant and his wife quarreled; that during the course of the quarrel the defendant offered his wife money for her support and when she approached him to accept it he stabbed her repeatedly with the knife, inflicting what later proved to be fatal wounds; that she, although mortally wounded, ran out of the house with the defendant in pursuit; that failing to overtake her he re-entered the house and with the same knife stabbed two of his youngest children in their backs while they were asleep, wounding one fatally and the other seriously; that the defendant waited for the other children to come into the house; that when one approached, the defendant with knife in hand called him to come in but the child ran away; that with the same knife the defendant then stabbed himself three times; that the police upon being notified entered the house and found the defendant lying on the floor seriously wounded but completely conscious; that they asked him if he had stabbed his wife and he answered "Yes," and upon further questioning he stated: "I thought it best to kill her and the children" and said that he had "stabbed" himself "to kill" himself; that the defendant readily identified the nearby knife as the weapon he had used upon his wife, his two children and himself; that one child died that evening and

466

the wife early the next morning as proximate results of the wounds inflicted by the defendant; that the defendant on several occasions thereafter coherently and voluntarily admitted and confessed to all circumstances of the killings and substantiated most of them on the witness stand.

That such a finding by the jury is warranted from all the evidence clearly demonstrates without the necessity of elaboration that there is substantial evidence as a matter of law, which not only tends to prove the element of premeditation beyond a reasonable doubt but also supports the verdict of guilty. The verdict therefore is not contrary to either the law or the evidence, the weight of the evidence being within the exclusive province of the jury. (See *Rep. Haw.* v. *Tsunikichi,* 11 Haw. 345; *Ter.* v. *Gagarin,* 36 Haw. 1; *Territory* v. *Alcosiba,* 36 Haw. 231.)

The other assignment of error states: "The Circuit Court erred in admitting the testimony of Dr. R. D. Kepner over the defendant's objection. Said ruling of the Circuit Court was in error and prejudicial to Defendant in that insanity is a matter of affirmative defense, and the offer of such testimony by the prosecution was purely anticipatory and was not properly admissible until Defendant had offered testimony on the issue of sanity by way of affirmative defense."

After arraignment and plea of not guilty, the defendant, through his counsel, invoked the provisions of Revised Laws of Hawaii 1945, section 10826, and moved that a commission be appointed to determine his mental condition and the existence in him of any mental disease or defect which would affect his criminal responsibility. The motion was granted summarily and Dr. R. D. Kepner was the psychiatrist member of the commission appointed by the court in response to the motion. Approximately two months later the commission filed its report. Six months

thereafter, the trial of the defendant commenced and lasted eight days. Dr. Kepner was called as witness by the Territory as a part of its case in chief to testify as an expert upon the mental condition of the defendant at the time of the examination by the commission and that of the offense which was about one year before trial. It is the admission of this testimony to which the defendant objects.

Section 10826, *supra*, prescribes procedural steps to be taken for the examination of a person indicted for a capital offense to determine "the then present insanity or mental irresponsibility" of the accused "before any trial on the criminal charge." Revised Laws of Hawaii 1945, section 10827, prescribes the procedure to be observed by the court where a person indicted for any offense shall be insane upon indictment or trial or where brought before the court to be discharged for want of prosecution he appears to be insane. Revised Laws of Hawaii 1945, section 10828, prescribes the procedure to be followed by the court in cases where "it shall be given in evidence upon the trial of any person charged with any offense, that the person was insane at the time of the commission of the offense," and Revised Laws of Hawaii 1945, section 10829, prescribes the procedure to be taken by the court "Whenever any person indicted for any crime shall be acquitted after having submitted evidence of his insanity or mental derangement. * * *"

In this case the invocation through counsel of the provisions of section 10826 and the action of the court in response thereto tentatively questioned the defendant's sanity and put the prosecution on notice that the present insanity or the mental irresponsibility of the accused at the time of the commission of the alleged offense, or both, might be raised at the trial. No provision of law or practice exists in this jurisdiction requiring the defendant by

plea or otherwise to raise the question of such insanity or the issue of such mental irresponsibility at the trial in order to be effective as a bar or defense and none permitting him to enter or file a special plea of insanity as a defense. (See R.L.H. 1945, §§ 10623, 10827.) Either present insanity or mental irresponsibility at commission of crime may appear or arise from the evidence of the prosecution as well as from that of the defense. Hence in proceeding to trial the prosecutor was confronted at the outset with a dual contingency relative to it which he apparently met by adducing affirmative evidence of sanity before he rested the Territory's case in chief. Although always incumbent upon the prosecutor in every criminal prosecution to foresee and deal with such dual contingency consistent with his twofold duty which is to present properly the case for the government and try the accused fairly, the considerations inherent in the preparatory nature of the proceedings inaugurated by the defendant prior to trial are not the ones which control the presentation of the case for the Territory. They are rather suggestive of the course to be followed at the trial, the propriety of such course being conditioned upon the exigencies of the particular case itself.

Neither the assignment nor its ground is directed towards the admission of evidence tending to prove sanity at the time of trial and they do not make it the subject of objection or error. The present sanity of the defendant was not questioned during trial nor is it on appeal. It therefore need not be further considered. The assignment, however, does challenge the propriety of admitting, as a part of the Territory's case in chief, evidence tending to prove sanity at the time of crime, the theory being that insanity is a matter of affirmative defense which precludes the admission of any opposing evidence thereto before the

defendant has had an opportunity to interpose the defense of insanity as a part of his case. This contention is unsound.

The plea of not guilty under which the trial proceeded is unlike a special plea in a civil action which, admitting the case averred, seeks to establish substantive ground of defense by a preponderance of evidence. Nor has it the same legal significance as a special plea of insanity, separable from a plea of not guilty and allowable by statute in some jurisdictions but not in this one. (See *People* v. *Leong Fook*, 206 Cal. 64, 273 Pac. 779; *Bennett* v. *State*, 57 Wis. 69, 14 N.W. 912.) It is not in confession and avoidance but, on the contrary, a plea that controverts every requisite or element of the crime charged as well as every fact essential to constitute it, each of which the prosecution has the burden of establishing from all the evidence beyond a reasonable doubt. That burden remains constant from the beginning to the end of the trial, never shifting to the defendant who is shielded throughout by the presumption of innocence until proved guilty from all the evidence beyond a reasonable doubt.

One of those requisites, elements or essential facts is the sanity of the accused at the time of the commission of the crime, even though sanity is but the normal and usual condition of the human mind. This is true because sanity bespeaks the mental capacity to commit crime and ability to form the criminal intent which renders the accused responsible criminally for his acts. Hence it goes to the very essence of the indictment against the defendant. The legal interpretation of the defendant's plea of not guilty therefore is that it controverted his own sanity and hence put it in issue at the outset of the trial. His plea thus contained indissolubly the concept of insanity as a defense. It likewise contained that of self-defense, alibi and other

comparable defenses inextricably interwoven with the facts and circumstances of the crime to which the prosecution's case must necessarily be directed. But as in the case of such other defenses insanity is not an affirmative one which the defendant must positively evidence as a matter of law to avoid conviction. On the contrary, consonant with the presumption of innocence, insanity like the others may arise solely from the prosecution's evidence without any evidence being adduced by the defendant. Each or any defense would merely attest the prosecution's failure in some particular to establish from all the evidence the guilt of the accused beyond a reasonable doubt.

This view is not inconsistent with the presumption of sanity indulged in by the law and justified by the general experience of mankind as well as by considerations of public safety. If that legal presumption did not exist, the government would be under the necessity of adducing affirmative evidence of sanity in every case, thereby seriously hampering the enforcement of the laws against crime in that ordinarily no question of insanity arises as a matter of fact. Consequently, to relieve the prosecution of that necessity, the law presumes that everyone charged with crime was sane at the time of its commission and thus supplies the prosecution in the first instance with the required proof of mental capacity to commit crime. However, this presumption is a rule of evidence and nothing else. It is a disputable or, as often termed, a rebuttable presumption subject to being negatived by slight evidence to the contrary which may be adduced by either the prosecution or defense. Hence it is liable to be overcome or so far impaired in the particular case that it cannot safely or properly be relied upon by the prosecutor, especially in a case of murder in the first degree. The very circumstances and atrocious nature of the crime may of them-

selves create in the minds of the jury a question of the accused's insanity which would imperil the efficacy of the prosecution unless, before resting, affirmative evidence of sanity is adduced. Consistent with his burden of proof, the prosecutor therefore has the responsibility of decision, he being the only officer of the court charged with the duty of presenting the case for the government. Where as here he responds to that responsibility by adducing evidence of the required sanity as a part of the Territory's case in chief, the evidence thereof is comparable to that of any other element of the crime charged. It hence is not purely anticipatory but germane to the alleged offense, the evidence being no more anticipatory of the defense of insanity than that of the accused's presence at the scene of crime would be of the defense of alibi. Nor is it conclusive, the evidenced sanity being capable of being subject to a reasonable doubt as a matter of law. But where the prosecutor responds by resting the Territory's case in chief upon the presumption of sanity, no judgment of dismissal on the ground that sanity was not evidenced could be properly entered, the presumption having the legal force of evidence and fulfilling the requirements of the prosecution's burden with respect to proof of sanity. More pertinent, on so resting when no evidence is adduced to the contrary, the presumption is conclusive, the presumed sanity not being capable of being subject to a reasonable doubt as a matter of law. It remains so until challenged or weakened by countervailing evidence adduced in the course of the case for the defense, at which and for the first time insanity becomes a question for the jury and the prosecution's burden requires that sanity be established beyond a reasonable doubt from the whole evidence, inclusive of rebuttal should it be adduced. Thus with respect to the resting of the Territory's case in chief, such reliance upon

the presumption of sanity would be less beneficial to the defendant than is reliance upon affirmative evidence thereof where as in the instant case without more a reasonable doubt entitling him to an acquittal could have existed as a matter of law. Nevertheless, the going forward with countervailing evidence or the interposing of the defense of insanity does not, strictly speaking, constitute the making of an affirmative defense, it merely amounting to evidentiary denial in support of the plea of not guilty that the accused had the mental capacity to commit crime.

The law itself does not require an accused to negative or overcome either the presumption or evidence of sanity or force him to establish the converse of sanity by any degree of proof nor, for that matter, the opposite of any other element of the crime charged. And it does not demand that he refute in any way the charge against him. It not only imposes no duty upon him to prove his own innocence but allows him to make every defense known to the law and at the same time affords him the protection of the presumption of innocence until the jury believes from all the evidence beyond a reasonable doubt that he is guilty and therefore sane and criminally responsible for his acts. (See *Davis* v. *United States*, 160 U.S. 469, 40 L. ed. 499; *State* v. *Pressler*, 16 Wyo. 214, 92 Pac. 806; *Graham* v. *People*, 95 Colo. 544, 38 P. (2d) 87; *State* v. *Warner*, 91 Vt. 391, 101 Atl. 149; *State* v. *Joseph*, 96 Conn. 637, 115 Atl. 85; *People* v. *McCann*, 16 N.Y. 58, 69 Am. Dec. 642; *State* v. *Bartlett*, 43 N.H. 224, 80 Am. Dec. 154; also *Post* v. *United States*, 135 Fed. 1.)

For the foregoing reasons the defendant's assignments of error are without merit. Nevertheless, pursuant to section 9564 of the Revised Laws of Hawaii of 1945, this court has reviewed the entire evidence to determine whether the interests of justice require a new trial. It finds after care-

ful examination that the defendant was afforded a fair and impartial trial throughout and that although the supreme penalty under the law was given no ground is disclosed upon the record to warrant, nor do the interests of justice necessitate, disturbance of the judgment.

Judgment affirmed.

*K. B. Dawson* and *J. H. Peters,* for plaintiff in error.

*W. Z. Fairbanks,* Public Prosecutor, for defendant in error.